# United States Court of Appeals
## For the First Circuit

No. 06-2137

FADY LOUIS HANA,

Petitioner,

v.

ALBERTO GONZALES, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF A FINAL ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Lynch and Lipez, Circuit Judges.

Peter A. Allen on brief for petitioner.
Siu P. Wong, Office of Immigration Litigation Trial Attorney, Peter D. Keisler, Assistant Attorney General, and Terri J. Scandron, Office of Immigration Litigation Assistant Director, on brief for respondent.

September 17, 2007

**LIPEZ, Circuit Judge**.  The petitioner, Fady Louis Hana, a native and citizen of Egypt, appeals an order of the Board of Immigration Appeals ("BIA") affirming a decision of the Immigration Judge ("IJ") that rejected his application for asylum as untimely, found no extraordinary circumstances that would excuse the late filing, and denied his claims for withholding of removal and protection under the Convention Against Torture.  We affirm the BIA's decision.

## I.

Hana, a Coptic Christian, claims that he faced persecution in Egypt on account of his religion.[1]  In 2000, Hana, who volunteered as a driver for his church's religious school, was assaulted by two bearded men while he was waiting for two of his passengers.  He believes that he was targeted for his religious views.  Over the next two years, Hana was twice approached by other men who tried to convince him to abandon his church duties by offering him a higher-paying position or by threatening him.  In November of 2000, after having spent the day delivering pamphlets to churches, Hana was run off the road by two bearded men driving

---

[1] We note that there are several discrepancies between Hana's written declaration in his initial application for asylum and his testimony at the removal hearing.  In her decision, the IJ discussed one such discrepancy (regarding whether an assault on January 7, 2000 comprised one or two incidents), but added that "[o]ther than [that] discrepancy, the respondent's testimony was consistent with that in his written statement."  We recount the facts as Hana described them in his oral testimony, except where otherwise noted.

a black micro-bus; Hana was unable to give the police any information about the men or their vehicle. The following month, Hana was involved in a more serious accident, when two men who had been following his car for an hour suddenly pulled in front of him and stopped short, forcing Hana's car into the back of their vehicle and Hana's head through his windshield. Hana did not offer any evidence suggesting that this accident was related to any of the prior incidents or that it was related to his religious beliefs.

Soon after this second accident, Hana sought treatment from a psychiatrist, who diagnosed him as suffering from a persistent case of depression due to external stress factors in his environment. The psychiatrist prescribed medication, and suggested that Hana change his environment. Hana had obtained a visa prior to the accident and took the first of two trips to the United States, arriving on January 3, 2001 and returning to Egypt approximately six months later, without attempting to seek asylum.

Within two weeks of returning to Egypt, Hana received an anonymous phone call in which the caller told him, "Welcome home. We are waiting for you; we won't forget you." This phone call apparently caused Hana to suffer a nervous breakdown. During this period, Hana was visited at home several times by his priest; on one occasion, the priest's car was vandalized, with the words "Mohammad is the messenger of Allah" scratched on the side.

Frightened by what he viewed as acts of persecution, Hana left Egypt for the United States on December 19, 2001 and was admitted on a six-month, non-immigrant visa. After he recovered from this period of extreme mental stress, Hana, who had by then overstayed his visa, hired a lawyer. Almost sixteen months after entering the country, he filed an Application for Asylum and for Withholding of Removal. At a hearing before an IJ, Hana conceded removability but, in addition to asylum, sought withholding of removal under section 241(b)(3) of the Immigration and Nationality Act ("INA")[2] and the Convention Against Torture ("CAT"). The IJ issued an oral decision denying Hana's asylum claim because it was not filed within the one-year deadline, see 8 U.S.C. § 1158(a)(2)(B), and Hana had not demonstrated "extraordinary circumstances" that would excuse the tardy filing, see id. § 1158(a)(2)(D). The IJ also rejected Hana's claims for withholding of removal and protection under the CAT, but granted Hana voluntary departure to leave the country before May 3, 2005. Hana filed a timely appeal to the BIA. The BIA dismissed his appeal, stating

---

[2] Section 241(b)(3) provides for withholding of removal if the "Attorney General decides that the alien's life or freedom would be threatened in [the destination country] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The alien bears the burden of proof and must show either that she has suffered past persecution, which creates a rebuttable presumption of future persecution, or that "it is more likely than not that he or she would be persecuted" on account of one of the five enumerated grounds if she were removed. 8 C.F.R. § 1208.16(b).

-4-

that "no clear error has been demonstrated with respect to any factual finding" made by the IJ, and reinstated the voluntary departure period. This appeal followed.

## II.

Hana raises two claims on appeal, the first of which concerns his request for asylum. Both the IJ and the BIA have determined that his asylum application was untimely. To be eligible for asylum, an applicant must show by clear and convincing evidence that he filed his application within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). Alternatively, the applicant may overcome this limitation by demonstrating the existence of "extraordinary circumstances" sufficient to merit an exemption from the one-year deadline. Id. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(5) (stating that failure to satisfy the one-year deadline may be excused if the alien identifies "extraordinary circumstances," directly related to the delayed filing, and if the alien "filed the application within a reasonable period given those circumstances").

## A. Timeliness of Asylum Application

Hana first asks us to reverse the BIA's decision to reject his application on timeliness grounds. Although he concedes that his asylum application was untimely, he argues that he presented "extraordinary circumstances" that excuse the delay, pursuant to 8 U.S.C. § 1158(a)(2)(D). Specifically, Hana claims

that upon his arrival in the United States, he suffered "extreme mental distress" (including depression and a nervous breakdown) as a result of the physical harm and threats made against him in Egypt, and that his mental condition constituted extraordinary circumstances.

We do not have jurisdiction to review the agency's findings regarding timeliness or its application of the "extraordinary circumstances" exception, 8 U.S.C. § 1158(a)(3), unless an alien identifies a legal or constitutional defect in the decision. 8 U.S.C. § 1252(a)(2)(D) (stating that no provision of the INA "which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law" raised before the appropriate court of appeals); see also Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007)(finding no jurisdiction over the BIA's determinations that an asylum application was untimely and there were no extraordinary circumstances excusing the delay); Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005) (noting that the statute's jurisdictional bar applies both to the BIA's determination that the petition was untimely and to its decision that no exception applies).

Both the IJ and the BIA have determined that there are no extraordinary circumstances justifying Hana's delayed application for asylum. We have no jurisdiction to review the rejection of Hana's asylum application on this ground.

## B. Due Process and Removal of Jurisdiction

Hana also argues that Congress has violated his right to due process by precluding our review over asylum timeliness decisions (including "extraordinary circumstances" decisions) under 8 U.S.C. § 1158(a)(3).[3] The Supreme Court has recognized Congress's plenary power over matters of immigration and naturalization. See, e.g., Reno v. Flores, 507 U.S. 292, 305 (1993) ("'[O]ver no conceivable subject is the legislative power of Congress more complete . . . .'" (quoting Oceanic Steam Navig. Co. V. Stranahan, 214 U.S. 320, 339 (1909))). Such plenary power has traditionally included Congress's power to remove judicial jurisdiction over executive decisions involving aliens. See, e.g., Carlson v. Landon, 342 U.S. 524, 537 (1952) ("The power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, 'with such opportunity for judicial review of their action as congress may see fit to authorize or permit.'"). "Deportation," according to the Supreme

---

[3] Hana separately contends that the IJ and BIA violated his right to due process by failing to provide him with a "fair and efficient" procedure for considering his claims. This argument spans only two sentences; the sole authority Hana cites merely indicates that the IJ and the BIA should consider the "extraordinary circumstances" question on an individualized basis. Hana has not identified any specific way in which his hearing was inadequate or unfair. Because this claim is perfunctory and unaccompanied by developed argumentation, we deem it waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Court, "is not a criminal proceeding and has never been held to be punishment . . . [, and thus] [n]o judicial review is guaranteed by the Constitution." Id.

Relying on the Supreme Court's holding in Carlson, both the Third and Ninth Circuits have explicitly rejected the argument that the jurisdictional bar of 8 U.S.C. § 1158(a)(3) represents a due process violation. See, e.g., Sukwanputra v. Gonzales, 434 F.3d 627, 632-33 (3d Cir. 2006) ("Because judicial review is not constitutionally guaranteed, the judicial review bar of § 1158(a)(3) does not violate the Due Process Clause."); Hakeem v. INS, 273 F.3d 812, 815-16 (9th Cir. 2001) (holding that the removal of jurisdiction over timeliness decisions does not violate the Due Process Clause).

While we have not previously addressed the question whether the jurisdictional bar of 8 U.S.C. § 1158(a)(3) represents a due process violation, we have held that removal of judicial review in the immigration context does not raise constitutional issues when some avenue for judicial relief remains available to address core legal and constitutional concerns. See Kolster v. INS, 101 F.3d 785, 791 (1st Cir. 1996). We have also held that the one-year deadline for submission of asylum applications does not violate aliens' due process rights. Ticoalu v. Gonzales, 472 F.3d 8, 11 (1st Cir. 2006) (rejecting a due process challenge to the enforcement of the one-year limitation on asylum applications

-8-

because "[d]ue process rights do not accrue to discretionary forms of relief, and asylum is a discretionary form of relief").

Drawing on these precedents, we now join our sister circuits in holding that the judicial review bar of § 1158(a)(3) does not represent a due process violation. Accordingly, we have no jurisdiction to review the BIA's rejection of Hana's application for asylum on timeliness grounds.

### III.

Hana also claims that he is entitled to withholding of removal under § 241(b)(3)(A) of the INA or relief under the CAT. To qualify for withholding of removal or CAT relief, Hana must demonstrate that he is "more likely than not" to face persecution or torture, respectively, upon return to Egypt. 8 C.F.R. § 1208.16(b), (c); Awad v. Gonzales, 463 F.3d 73, 76-77 (1st Cir. 2006); Guzman v. INS, 327 F.3d 11, 16 (1st Cir. 2003). Both the IJ and the BIA determined that Hana has not made such a showing. We review the BIA's factual findings under the deferential "substantial evidence" standard. Guzman, 327 F.3d at 15. This means that we must affirm the BIA's findings if they were "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Dine v. Gonzales, 464 F.3d 89, 92 (1st Cir. 2006) (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

## A. Withholding of Removal

An applicant seeking withholding of removal under INA §
241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), see supra note 2, bears the
burden of demonstrating that "his or her life or freedom would be
threatened in the proposed country of removal on account of race,
religion, nationality, membership in a particular social group, or
political opinion." 8 C.F.R. § 1208.16(b). The applicant must
"establish a clear probability of persecution to avoid
deportation." INS v. Stevic, 467 U.S. 407, 413 (1984); see also
Pan, 489 F.3d at 86 (noting that the "more likely than not"
standard requires greater evidence than the "reasonable
possibility" standard applied in asylum cases).

The BIA correctly concluded that Hana has not met this
standard. We have previously stated that mere harassment does not
rise to the level of persecution, Susanto v. Gonzales, 439 F.3d 57,
59-60 (1st Cir. 2006), and that a finding of persecution requires
more than unpleasantness or unfair treatment, Nikijuluw v.
Gonzales, 427 F.3d 115, 120-21 (1st Cir. 2005). Here, Hana has
identified only two incidents in which he suffered any physical
harm at all, and in one of those incidents (the car accident),
there was no evidence that his religion was known by the people who
harmed him. Thus, Hana was harmed by someone who knew of his
religion only once, suffered very minor injuries, and has no
evidence suggesting that the violence he suffered there was

-10-

organized, planned, or otherwise part of a larger pattern characterized by government involvement or acquiescence. See id. ("[P]ersecution 'always implies some connection to government action or inaction.'" (quoting Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005))). Hana has not demonstrated that he would more likely than not suffer persecution if he returned to Egypt. We affirm the BIA's rejection of Hana's request for withholding of removal.

## B. Relief Under the CAT

An applicant claiming protection under the CAT bears the burden of establishing that "it is more likely than not that he or she would be tortured if removed to the proposed country." 8 C.F.R. § 1208.16(c)(2); see, e.g., Guzman, 327 F.3d at 16. Although there need not be any connection between the likely torture and the alien's religion (or race, or political opinions, etc.), the alien must provide some specific evidence that he will likely suffer "severe physical or mental pain or suffering" that is "intentionally inflicted," "by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control" of him. Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004) (quoting Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004)).

Hana has presented no evidence that he has experienced any torture while in Egypt, nor that there is any likelihood of

-11-

torture upon his return.  The IJ noted that Hana had no evidence that his family members, including his mother and two sisters, who are members of the same faith, have been subjected to torture, or even lesser violence.  On this record, the BIA's rejection of relief under the CAT is supported by substantial evidence and we affirm.

For the foregoing reasons, we **deny** the petition for review.