**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

---

No. 07-1647

GHOSN SALIBA,

Petitioner,

v.

MICHAEL B. MUKASEY,[*]
ATTORNEY GENERAL,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Peter A. Allen on brief for petitioner.
Joan H. Hogan, Attorney, Office of Immigration Litigation,
Peter D. Keisler, Assistant Attorney General, and Greg D. Mack on
brief for respondent.

---

January 10, 2008

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Michael B. Mukasey has been substituted for former Attorney General
Alberto R. Gonzáles as the respondent herein.

**STAHL**, **Senior Circuit Judge**.  The Board of Immigration Appeals (BIA) affirmed, per curiam, an Immigration Judge's (IJ's) denial of Ghosn Saliba's claims for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  Saliba, a native and citizen of Lebanon, now petitions this court for a review of the BIA's denial of his claims.  Because this court lacks jurisdiction over the asylum claim, and because a reasonable fact-finder would not be compelled to conclude that Saliba has met his burden of proof for the additional relief he seeks, we deny Saliba's petition for review.

## I.  BACKGROUND

The IJ found Saliba credible.  Therefore, we relate the facts of the case as he testified to them.

Before leaving Lebanon in May 1993, Saliba, a Greek Orthodox Christian, worked as a commercial fisherman.  During this time, Lebanon was partially occupied by the Syrian army.  Saliba preferred to sell his fish in the Christian section of the city of Anfeh, as the mixed-religion area in which he lived was too poor to provide a good market.  When Saliba attempted to haul his catch to the Christian section, Syrian officials at the pier would demand one or two kilograms of his fish before letting him pass.[1]  Saliba

---

[1]It is unclear precisely how many times Saliba encountered such difficulties.  Some of his testimony, set out more fully below, indicates that he was detained on four specific occasions. Other portions of his testimony suggest, however, that he was

testified that he assumed that the guards took a portion of his catch because he was Christian, based on the fact that the Syrians "used to kill people" and "do abnormal things to people" and also because they confiscated the fish when he wished to cross over to the Christian section of the city.

Between 1991 and 1993, Saliba was detained by members of the Syrian army on several occasions when he attempted to travel to the Christian section of Anfeh to sell his fish. Each detention occurred after the officers reviewed Saliba's identification card, which revealed his last name "Saliba," which he claims means "cross" in Arabic. The Syrian officers would then proceed to detain him in a "very dark room" for "two [or] three hours" before releasing him. He testified that, at times, the conditions were very uncomfortable. He claimed that, during these episodes, the guards would slap his face and say "very bad words" to him, some of which related to his Christian faith. Although Saliba's relatives reported the incidents, he was unable to obtain any assistance to stop the harassment.

Saliba arrived in the United States on May 15, 1993, on a nonimmigrant visa for pleasure travel, with authorization to remain for a period not to exceed sixty days. Saliba neglected to leave and failed to file for asylum within the one-year time limit.

---

harassed less severely on a more frequent basis. The IJ's findings do not explicate the matter.

On January 9, 2003, the Immigration and Naturalization Service charged Saliba with remaining in the United States longer than permitted and informed him that he was subject to removal. In response, Saliba admitted the allegations and conceded removability as charged but sought relief in the form of asylum, withholding of removal, and protection under the CAT.

At the merits hearing before the IJ, Saliba also testified that, based on his previous experiences, he is afraid to return to Lebanon, for fear that the Syrian military will hurt or arrest him. In order to rebut the grounds for Saliba's claimed apprehension, the government introduced evidence indicating that the Syrian military has withdrawn from the country. Saliba maintains that, despite such reports, the Syrian military remains present in Lebanon to some degree, intelligence which he apparently acquired from watching television. Additionally, some documentary evidence in the record supports this position. During Saliba's presence in the United States, his wife and four children have remained in Lebanon, and he admitted to the IJ that they have not been subjected to any problems.

The IJ denied Saliba's asylum application and other attendant claims, finding that, while credible, Saliba failed to apply for asylum within one year of arriving in the United States, failed to present a sufficient basis to substantiate a well-founded fear of future persecution, and had not shown he would be tortured

-4-

if returned to Lebanon. Saliba now seeks review of the BIA's decision adopting the IJ's findings.

## II. DISCUSSION

### A. Asylum

We review the BIA's denial of asylum for substantial evidence and accept the BIA's findings of fact if they are supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Njenga v. Ashcroft, 386 F.3d 335, 338 (1st Cir. 2004) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). We will reverse factual determinations contained in the decision below only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Where, as here, "the BIA adopts an IJ's decision, we review the relevant portion of the IJ's opinion as though it were the decision of the BIA." Guillaume v. Gonzáles, 504 F.3d 68, 72 (1st Cir. 2007).

An application for asylum must be filed within one year of the alien's arrival in the United States, absent changed circumstances affecting eligibility for asylum or extraordinary circumstances relating to the delay in filing. See 8 U.S.C. § 1158(a)(2)(B). In this case, it is undisputed that Saliba resided in the United States for more than nine years before he filed for asylum. The IJ rejected Saliba's contention that changed or extraordinary circumstances exist warranting wavier of this time

-5-

limit.[2]  We lack jurisdiction to review this determination.  See 8 U.S.C. § 1158(a)(3); Sharari v. Gonzáles, 407 F.3d 467, 473 (1st Cir. 2005) (explaining that we lack jurisdiction to review the BIA's findings regarding compliance with the one-year time limit as well as whether there are extraordinary or changed circumstances sufficient to merit an exception).

        Saliba concedes, as he must, that "the judicial review bar of § 1158(a)(3) does not represent a due process violation." Hana v. Gonzáles, 503 F.3d 39, 44 (1st Cir. 2007).  Simply put, "[d]ue process rights do not accrue to discretionary forms of relief, and asylum is a discretionary form of relief." Id. at 43 (alteration in original) (quoting Ticoalu v. Gonzáles, 472 F.3d 8, 11 (1st Cir. 2006)) (internal quotation marks omitted). Nevertheless, he maintains that the application of the jurisdictional bar to review, in the instant case, violates his procedural due process rights under the United States Constitution. The vast majority of Saliba's briefing on this subject, however, focuses on general, prudential concerns related to the wisdom of vesting review of decisions rendered under § 1158(a)(2)(B) exclusively with the executive branch of government, thus insulating it from external review of its own decisions.  Whatever

_____

        [2]Saliba argued that conditions in Lebanon grew worse during his time in the United States and that he belatedly discovered the availability of the asylum process.

-6-

their merits, these arguments are more properly addressed to Congress.

Saliba's attempt to circumvent the jurisdictional bar is likewise unavailing. He argues that, notwithstanding the constitutionality of § 1158(a)(3), "the failure of the IJ to make an individualized analysis [of the relevant issues] was a violation of due process . . . ." He maintains that the IJ should have "explore[d] the reasons for [Saliba's] late filing," but that "there is no evidence that the IJ outside of his oral decision or the BIA ever undertook such an exploration." Thus, Saliba reasons that the IJ and the BIA violated his right to a fair and efficient procedure to evaluate his asylum claim.

It is true that we retain jurisdiction to consider "constitutional claims or questions of law raised [in compliance with the statute]." 8 U.S.C. § 1252(a)(2)(D). Nevertheless, "[a] petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an . . . argument in constitutional garb." Mehilli v. Gonzáles, 433 F.3d 86, 93 (1st Cir. 2005) (second alteration in original) (quoting Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir. 2001)) (internal quotation marks omitted). "[T]o invoke our jurisdiction, a petitioner must allege at least a colorable constitutional violation." Id. (alteration in original) (quoting Torres-Aguilar, 246 F.3d at 1271) (internal quotation marks omitted). Thus, "the putative constitutional or

legal challenge must be more than a disguised challenge to factual findings." Pan v. Gonzáles, 489 F.3d 80, 84 (1st Cir. 2007); see also Mehilli, 433 F.3d at 94 (holding that arguments relating to whether an IJ properly weighs or even considers a petitioner's evidence fail to raise constitutional concerns).

Here, Saliba's contention fails for two reasons. First, the essence of the argument is simply that the IJ did not consider the evidence of changed or extraordinary circumstances to the extent deemed appropriate by Saliba. Even if true, such an error relates to the IJ's discretion in formulating his findings and, thus, is unreviewable by this court because it does not implicate the Constitution. See Hana, 503 F.3d at 43-44; De Araujo v. Gonzáles, 457 F.3d 146, 153-55 (1st Cir. 2006); Mehilli, 433 F.3d at 93-94.

Second, Saliba's premise is factually incorrect. In his oral opinion, the IJ specifically examined the issue of whether any changed or extraordinary circumstances warranted application of an exception to the one-year time limit (as Saliba seems to acknowledge in his appellate brief). A petitioner is not entitled to have every contour and minor detail of his nonmeritorious argument painstakingly explored to his own satisfaction. See Karim v. Gonzáles, 424 F.3d 109, 111 (1st Cir. 2005) ("The obligation to explain and articulate depends importantly on the strength of the position being urged. Where no plausible reason is offered for a

request, the word 'no' is plainly sufficient."). Moreover, at the merits hearing, the IJ actually importuned counsel for Saliba to address his client's purported entitlement to an exception from the one-year requirement more thoroughly due to his obvious recognition that the issue was potentially dispositive. Thus, the IJ paid ample regard to any constitutional rights to which Saliba might conceivably be entitled. Accordingly, Saliba's claim for asylum was properly denied.

**B.  Withholding of Removal and Protection Under the CAT**

Alternatively, Saliba argues that he is entitled to withholding of removal and protection under the CAT. To qualify for withholding of removal, Saliba must establish that his "life or freedom would be threatened in [Lebanon] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). A petitioner "has the burden of proving that it is more likely than not that his life or freedom will be threatened on account of one of [these] five protected grounds were he to be repatriated." Segran v. Mukasey, ___ F.3d ___, ___, 2007 WL 4171217, at *5 (1st Cir. Nov. 27, 2007) (citing 8 U.S.C. § 1101(a)(42)). "This 'more likely than not' standard is harder for an alien to satisfy than the 'reasonable possibility' standard for showing a well-founded fear of future persecution in asylum cases." Pan, 489 F.3d at 86.

-9-

As with asylum, however, "[a]n applicant for withholding may . . . create a rebuttable presumption that his life or liberty would be threatened upon return to his home country by proving that he suffered past persecution there." Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007) (citing 8 C.F.R. § 208.16(b)(1)). Moreover, "[a]n alien's credible testimony, standing alone, may sustain his burden of proving eligibility for withholding of removal." Pan, 489 F.3d at 86.

The IJ found that Saliba was likely targeted for abuse for financial reasons rather than his religion and that, even were this not the case, Saliba did not show that he would be persecuted upon returning to Lebanon because the Syrian army, the source of the alleged persecution, had withdrawn from the country. Both of these findings are supported by substantial evidence. Based on Saliba's testimony, it was permissible for the IJ to infer that the Syrian officers who demanded part of Saliba's catch were motivated by greed rather than anti-Christian sentiment. See, e.g., Ferdinandus v. Gonzáles, 504 F.3d 61, 63 (1st Cir. 2007) (affirming decision denying withholding of removal where it was ambiguous whether the rioters who robbed petitioner were animated by religious or pecuniary motives). Thus, Saliba cannot show past persecution on one of the five enumerated grounds and is not entitled to a presumption of future persecution. See Guillaume, 504 F.3d at 72-73.

Similarly, while the parties adduced conflicting evidence concerning whether the Syrian army had completely withdrawn from Lebanon, the IJ was not compelled to find that the Syrian army presented a continuing or future threat to Christians in Lebanon such as Saliba. See Chahid Hayek v. Gonzáles, 445 F.3d 501, 508-09 (1st Cir. 2006) (holding that current State Department reports did not support the notion of widespread persecution and torture of Maronite Christians in Indonesia). The IJ's determination that the Syrian military has withdrawn from Lebanon is plausible in light of the available documents, including the 2004 Country Report on Lebanon and an International Religious Freedom Report issued by the United States Department of State, news articles, and other analyses of the region. Our deferential standard of review forbids further inquiry. See Pan, 489 F.3d at 87 n.6 (explaining that "the factfinder's choice among plausible but conflicting inferences cannot be clearly erroneous") (paraphrasing United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990)). Additionally, we note that Saliba's wife and children continue to reside safely in Lebanon, severely undercutting his claim that he will suffer persecution if repatriated to his country of origin. Ferdinandus, 504 F.3d at 63.

Finally, we turn to Saliba's claim for relief under the CAT. "An applicant claiming protection under the CAT bears the burden of establishing that 'it is more likely than not that he or she would be tortured if removed to the proposed country.'" Hana,

-11-

503 F.3d at 44 (quoting 8 C.F.R. § 1208.16(c)(2)).  The IJ's permissible finding that the Syrian military no longer maintains a presence in Lebanon precludes relief on this ground, as Saliba presented no evidence of any other likely persecutor.  Nor did he present any evidence of the likelihood of torture if he returned.  Thus, Saliba has not demonstrated that he is entitled to protection under the CAT.

### III.  CONCLUSION

For the foregoing reasons, we <u>deny</u> Saliba's petition for review.

<u>Affirmed</u>.