**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

---

No. 07-1968

CLAUDENIR NUNES LORDES,

Petitioner,

v.

MICHAEL B. MUKASEY,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, Lipez, and Howard,
Circuit Judges.

---

Mary E. Womboldt for petitioner.
Scott Rempell, Trial Attorney, Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, and Linda S. Wernery, Assistant Director, Office of Immigration Litigation, U.S. Department of Justice, for respondent.

---

August 13, 2008

---

**LIPEZ**, **Circuit Judge**.  Claudenir Nunes Lordes, a citizen and native of Brazil, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming a decision of the Immigration Judge ("IJ"), rejecting his application for asylum as untimely, and denying his claims for withholding of removal and protection under the Convention Against Torture ("CAT").  We deny the petition for review.

## I.

Lordes entered the United States through Tecate, California on March 12, 2002, without being admitted or paroled. Later that same day, he was issued a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i).  On April 30, 2002, an IJ in San Diego entered an in absentia order of removal. On May 31, 2002, Lordes filed a motion to reopen with the IJ. Although the motion was initially denied, the BIA remanded the case for further proceedings after finding that ineffective assistance of counsel had caused Lordes to fail to appear at the April 30 hearing and that this ineffective assistance constituted an "exceptional circumstance" excusing his failure.

Lordes then successfully moved to change venue to Boston, Massachusetts.  On October 27, 2004, Lordes's current counsel entered her first appearance on his behalf in Boston Immigration Court.  On July 19, 2005, Lordes filed an application for asylum and withholding of removal.  This asylum application came more than

-2-

three years after Lordes's entry into the United States and more than eight months after his current counsel began representing him.

At a hearing on February 14, 2006, the IJ heard testimony from Lordes regarding his labor union membership and the three incidents that formed the basis of his claims for asylum and withholding of removal. Lordes testified that he had joined the Sindeferro labor union in 1988. He stated that he participated in demonstrations, passed out pamphlets, manned picket lines during strikes, and invited others to join the union.

The first of the three incidents he described occurred in February 2000, when two armed men broke into his home, locked Lordes and his family in the bathroom, and took all of the valuables in the home. Lordes testified that the burglars warned the family not to report the incident to the police and to "stay away from the problems."[1] He did not report this incident to the police because of the threats the burglars had made to kill or kidnap his family. He believed these threats because the burglars "were against the movement that [he] was working on in the syndicate." After the incident, his wife and children stayed at his father-in-law's farm for several weeks because he felt they would be safer there.

---

[1] In his brief on appeal, Lordes asserts that "the problems" to which the men were referring were union activities.

Second, Lordes testified that he was attacked in January 2001 while riding the bus to work. The attacker stole his watch and wallet and he missed three days of work from injuries sustained in the attack. Lordes's supervisor reported the incident to the police, but Lordes himself did not speak with police about it. Lordes stated that the attacker's characteristics were the same as those of the burglars who had robbed his home.

Third, Lordes testified about a second home invasion in September 2001. One night while he was at work, four armed men shot and killed the family guard dog, broke into his home, tied up his wife and children, and stole all of the valuables in the house, including his car. Lordes reported this incident to the police. He testified that he thought his family had been targeted for this attack because he was "like a leader in the syndicate." He submitted a translation of the police report of this incident to the IJ.

Lordes worked at Companhia Vale Do Rio Doce ("CVRD") as a diesel train mechanic from 1984 to 2002. After the three incidents described above, CVRD offered to transfer Lordes to Rio de Janeiro or Sao Paolo, but he testified that he did not want to move to another city "[b]ecause [he] had constructed life in this city for more than 15 years. And it would be very difficult to go and move to another city and start everything anew."

At the hearing, Lordes also testified that he did not know about the asylum system when he arrived in the United States. He stated that he had intended to obtain legal status through a labor certification.[2]

In an oral decision, the IJ ruled that Lordes's asylum application was untimely because it was filed more than one year after his arrival in the United States. The IJ did not credit Lordes's testimony that he was unaware of the availability of asylum when he arrived in 2002. The IJ also noted that the ineffective assistance of counsel that justified the reopening of Lordes's case did not relate to any failure to file an asylum application or failure to advise Lordes about the availability of asylum. Thus, the IJ found that there were no "extraordinary circumstances" that could excuse the late filing.

The IJ also denied Lordes's claim for withholding of removal.[3] The IJ stated that Lordes had not introduced sufficient

_____

[2]On October 2, 2003, Lordes filed for a labor certification from the Department of Labor. His counsel at the time apparently hoped that the deadline for adjustment of status under section 245(i) of the Legal Immigration Family Equity Act (LIFE Act) might be extended. However, the April 30, 2001 deadline, established by the LIFE Act Amendments of 2000, was not subsequently extended. As a result, Lordes was never eligible for adjustment of status through the LIFE Act; the deadline had passed before he arrived in the United States.

[3]The IJ questioned Lordes's credibility with regard to the second home invasion because, inter alia, the police report indicated that Lordes had been at home during the attack, while he testified that he had not been present. However, the IJ held that even assuming Lordes's testimony had been credible, it was

evidence to show that the attacks came about on account of his membership in a labor union. The IJ noted that there was no evidence regarding the extent of Lordes's involvement with a union, or that he was a member of one at all. The IJ found it "far more likely that the perpetrators attacked the respondent's home because it was in a decent neighborhood where apparently people of adequate means lived." The IJ held that Lordes could have relocated within his own country. The IJ also concluded that the government of Brazil was "not a party" to or "complicit in" any reported violence against labor union organizers. Accordingly, the IJ "d[id] not find it to be more likely than not that the respondent would be persecuted if he returns to Brazil."

Although Lordes had not specifically requested protection under the CAT, the IJ considered the claim sua sponte and concluded that Lordes had not shown that "any segment of the government of Brazil" would harm him. Instead, the IJ concluded that Lordes was afraid of the "pervasive criminality" in Brazil. The IJ thus denied protection under the CAT. The IJ also concluded that Lordes was ineligible for voluntary departure because he had been served with a Notice to Appear within one year of arriving in the United States. See 8 U.S.C. § 1229c(b)(1)(A).

---

insufficient to establish the withholding of removal claim. Because of these assumptions, we do not have to consider the impact on this case of the REAL ID Act, which altered the standard for evaluating an alien's credibility. See 8 U.S.C. § 1158(b)(1)(B)(iii).

Lordes appealed to the BIA, which adopted and affirmed the decision of the IJ. The BIA held that the ineffective assistance of Lordes's prior counsel "did not affect the respondent's untimely filing of his application for asylum" and agreed with the IJ's conclusion that Lordes had "not demonstrated he suffered past persecution in Brazil on account of a protected ground." Lordes then filed this petition for review.

## II.

Lordes asks us to reverse the determination by the IJ and the BIA that his untimely filing of an application for asylum was not excused by "extraordinary circumstances." However, under 8 U.S.C. §§ 1158(a)(3) and 1252(a)(2)(D), we do not have jurisdiction to review the agency's application of the "extraordinary circumstances" exception, unless the alien identifies a legal or constitutional defect in the decision. Hana v. Gonzales, 503 F.3d 39, 43 (1st Cir. 2007).

Lordes identifies no such defect. Although he argues that the jurisdictional bar in § 1158(a)(3) violates due process, this argument is foreclosed by our holding in Hana, 503 F.3d at 44. He also argues that Congress intended the "extraordinary circumstances" exception to be interpreted broadly and that Lordes's "extreme circumstances of ineffective assistance of counsel, coupled with ignorance of the U.S. asylum law" constitute such circumstances. However, this argument does not raise any

constitutional or legal claims.  Instead, it asks us to second-guess the agency's assessment of the merits of the "extraordinary circumstances" claim.  This is precisely what we cannot do under § 1158(a)(3).  Accordingly, we are without jurisdiction to review the rejection of Lordes's asylum application on timeliness grounds.

**III.**

Lordes also challenges the denials of withholding of removal and protection under the CAT.  Where, as here, the BIA adopts and affirms the IJ's ruling, and also discusses some of the bases for the IJ's opinion, we review both the IJ's and the BIA's opinions.  Zheng v. Gonzales, 475 F.3d 30, 33 (1st Cir. 2007).  We afford a high degree of deference to factual findings in those opinions and must allow them to stand "unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Rodriquez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)).

**A.  Withholding of Removal**

An alien seeking withholding of removal, pursuant to 8 U.S.C. § 1231(b)(3)(A), must demonstrate that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 C.F.R. § 1208.16(b).  The alien may meet this burden by showing either past persecution, which creates a rebuttable presumption of future persecution, or

that "it is more likely than not" that he would suffer future persecution if he returned. Id.; Hana, 503 F.3d at 42 n.2.

Lordes contends that his testimony that the three attacks he experienced in Brazil were motivated by his labor union membership was unrefuted and therefore conclusive. However, "[w]here the record supports plausible but conflicting inferences," the IJ is free to choose between those inferences. Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007). In this case, the IJ did just that, concluding that, based on Lordes's description, the attacks had likely been motivated by "basic criminality and the intent of evil doers to rob the respondent and his family of their possessions." The BIA agreed with the characterization of Lordes as a "victim of random violence." Even on the assumption that Lordes's testimony was entirely credible, his conclusory statements linking the three attacks to his union membership do not compel the conclusion that he was targeted "on account of" that membership. See Samayoa Cabrera v. Ashcroft, 367 F.3d 10, 14 (1st Cir. 2004) ("While an alien seeking asylum is not required to provide direct proof of his persecutors' motives, he must provide some evidence of such motives."). Accordingly, we affirm the determination that Lordes did not demonstrate past persecution.

If no past persecution has been shown, the alien bears the burden of demonstrating that it is more likely than not that he or she would experience persecution in the future if he or she

returned and that "it would not be reasonable for him or her to relocate" within the home country to avoid threats of future persecution. 8 C.F.R. § 1208.16(b)(2),(b)(3)(i). The IJ concluded that Lordes had not met that burden and the BIA agreed, stating that Lordes had "failed to demonstrate . . . that he would experience problems throughout the country of Brazil." Lordes does not address this issue in his appellate briefs. Accordingly, he has abandoned the issue. Berrio-Barrera v. Gonzales, 460 F.3d 163, 168 & n.2 (1st Cir. 2006). In any event, the record supports the conclusion that internal relocation would be feasible. Thus, his withholding of removal claim fails.

## B. CAT Protection

To be eligible for CAT protection, an alien must demonstrate that it is more likely than not that he would be tortured in his home country by the government or with its acquiescence. 8 C.F.R. §§ 1208.16(c)(4), 1208.18(a)(1). "Acquiescence" requires that a "public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). Lordes has failed to establish that any segment of the Brazilian government would torture him or acquiesce in his torture if he returned to Brazil. Thus, he is ineligible for CAT protection.

Petition denied.