# United States Court of Appeals
## For the First Circuit

No. 08-1331

MOHAMMAD USMAN,

Petitioner,

v.

ERIC H. HOLDER, JR.*, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Stahl, and Lipez,
<u>Circuit Judges.</u>

<u>Peter A. Allen</u>, and <u>Peter Allen, P.C.</u>, for petitioner.
<u>Gregory G. Katsas</u>, Assistant U.S. Attorney General, Civil Division, <u>Anthony N. Norwood</u>, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, and <u>Surell Brady</u>, Trial Division, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, for respondent.

May 22, 2009

---

*Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as the respondent.

**LIPEZ**, **Circuit Judge**.    Petitioner Mohammad Usman, a native and citizen of Pakistan, seeks review of a decision of the Board of Immigration Appeals (BIA) affirming the denial by an immigration judge (IJ) of Usman's application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).   The BIA adopted the IJ's findings that Usman's asylum application was not filed within a year of his arrival in the United States, as required by statute, and that petitioner did not qualify for an exception to the deadline.   The Board also agreed with the IJ's conclusion that, because appellant had not shown a clear probability of persecution or torture if returned to Pakistan, he was ineligible for either withholding of removal or protection under the CAT.   We affirm the Board's decision in all respects.

**I.**

Usman, who was then employed as a seaman, entered this country on April 21, 1999, on a C1 visa[1] that authorized him to be in the United States, in transit, until April 23, 1999, when he was supposed to join his ship and its crew in Puerto Rico.   However, Usman failed to leave the country by the date specified in the C1 visa, and, by remaining in the United States without authorization,

---

[1] A C1 visa allows for the temporary admission of an alien in "immediate and continuous transit" through the United States.   8 U.S.C. § 1101(a)(15)(C); 8 C.F.R. § 214.1(a)(1)(ii).

-2-

became removable under 8 U.S.C. § 1227(a)(1)(B) (rendering removable any alien whose "nonimmigrant visa . . . has been revoked"). On March 12, 2003, the Department of Homeland Security (DHS) issued a Notice to Appear charging Usman with removability on this ground. Petitioner responded by filing an application for asylum, withholding of removal, and protection under the regulations implementing the CAT. See 8 C.F.R. § 1208.16(b), (c). The following facts are drawn from this application and Usman's testimony before the IJ.

A Sunni Muslim, Usman was born in the Northwestern Province of Pakistan in 1957. His four sons were all born in Pakistan between 1983 and 1998. As of 2005, Usman was divorced, and all of his sons lived in Pakistan with the rest of his immediate family.

Between 1976 and 1988, Usman was employed as a merchant seaman, working for various shipping companies. During this time, he made frequent stops in the United States. Between 1986 and 1990, he was employed as a cook and store manager in Pakistan, before resuming work as a merchant seaman in 1991. Between 1991 and 1998, Usman estimated that he spent approximately half his time on board ship.

Usman's claims for relief were based on allegations that he had experienced persecution at the hands of Islamic fundamentalists in Pakistan on account of his political affiliation.

-3-

Before the IJ, Usman described a handful of encounters with such fundamentalists over the course of about twenty years. Usman claimed that these problems began in 1976, when he was beaten by fundamentalists for being a member of a family loyal to the Pakistan People's Party (PPP). Usman himself did not become a member of this party until 1990, but began volunteering for them in 1973. He stated that he experienced a similar attack in 1984, and that after both incidents he had complained to the police to no avail. He believed that because his work involved frequent travels to the United States, he had come under suspicion as an American sympathizer, and perhaps even a spy.

As a member of the PPP, Usman distributed pamphlets and other party literature and attended party meetings at which he sometimes gave speeches denouncing Islamic fundamentalism. He testified that during both the fall of 1993, in the midst of an election season, and then in the winter of 1997, he was again attacked and beaten by groups of fundamentalists on account of his membership in and activities on behalf of the PPP. Another attack followed after he attended a PPP meeting near his home in March 1999 and spoke out against the Pakistani government. Finally, he stated that just before his last trip to the United States in April 1999, he was once again attacked by fundamentalists.

Usman explained at the hearing that, after his unsuccessful attempt to meet his ship and its crew in Puerto Rico

-4-

in 1999, he decided to stay in the United States because of these "political problems" in Pakistan, which caused him to fear for his life. He told the IJ that he had not applied for asylum until 2003 because he did not know that he had the right to do so, and because his inability to speak English prevented him from understanding and exercising his rights. He also stated that the Islamic fundamentalists in Pakistan became more active after the American invasion of Afghanistan in 2001, and that they had since come to his family's home and begun to threaten Usman's family, even attacking his home on several occasions.

The IJ ruled that Usman's application for asylum, filed nearly five years after his arrival in the United States, was untimely, and that he did not qualify for either of the exceptions to the one-year filing deadline described in the statute. He noted that Usman's argument for waiver of the one year requirement was essentially "one of ignorance of the law, and this [did] not constitute extraordinary or changed circumstances or conditions." The IJ also held that Usman had not demonstrated a "clear probability" that he would be subjected to persecution if he returned to Pakistan, and therefore that he did not qualify for withholding of removal. The IJ reasoned that Usman himself could not have harbored such a fear, since he had "voluntarily returned to Pakistan on numerous occasions after the claimed beatings at the hands of Islamic fundamentalists in Pakistan," and that the

Pakistani government had not sanctioned, and, indeed, was actively attempting to suppress the activities of the extremists. Finally, the IJ held that Usman had made no claim "that he would be tortured by anyone in the country of Pakistan were he to be returned to that country," much less that he would be tortured "at the instigation of or with the consent of public officials," and, therefore, Usman had failed to make out a claim under the CAT. However, the IJ did grant voluntary departure.

Usman appealed the decision to the BIA. The Board "specifically agree[d] with the Immigration Judge that the respondent ha[d] not met the burden of proving that the application for asylum was timely filed as required or that [he] qualifie[d] for an exception to the deadline." The BIA conceded that the IJ had not explicitly made an adverse credibility finding, but agreed with his conclusion that Usman had failed to meet his burden of proving eligibility for withholding of removal, characterizing Usman's testimony as describing only "some isolated attacks" and citing Usman's frequent returns to Pakistan as evidence that he did not fear persecution. The Board also summarily affirmed the IJ's conclusion about Usman's CAT claim.

Before us, petitioner argues that his hearing before the IJ did not comport with the requirements of the Due Process Clause because the judge failed to "undertake any meaningful analysis" or "fully evaluate" his claims. Usman contends that the conduct of the

-6-

hearing below, and the judge's alleged failure to "evaluate the totality of Usman's personal circumstances," undermined the "fairness and integrity of the removal process," and consequently that the ensuing decision is not owed the "customary deference." He also claims that the IJ improperly denied his claims for withholding of removal and relief under the CAT.

The government responds that we lack jurisdiction to review the IJ's determination that Usman's application was untimely and that he did not qualify for either of the exceptions. The government asserts that, although Usman purports to raise a due process challenge to the proceedings below, he has no cognizable constitutional claim upon which we may base appellate jurisdiction. Furthermore, the government contends that Usman's failure to present evidence linking his alleged persecution by Islamic fundamentalists to any government action or inaction was a sufficient basis for the IJ to conclude that Usman was ineligible for withholding of removal and CAT protection.

## II.

When the BIA adopts aspects of the IJ's opinion, we review those portions of the opinion in addition to the BIA decision itself. Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009). Where we have the jurisdiction to do so, we review factual findings under the deferential "substantial evidence" standard, under which we do not disturb the IJ's factual findings if they are

"supported by reasonable, substantial, and probative evidence on the record considered as a whole." Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). The substantial evidence standard applies to claims for asylum, withholding of removal, and relief under the CAT. Rashad v. Mukasey, 554 F.3d. 1, 4 (1st Cir. 2009).

Under 8 U.S.C. § 1158(b)(1)(B)(i), an alien seeking to qualify for asylum must prove that he is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A), i.e., that he is "unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [the country of origin] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." However, 8 U.S.C. § 1158(a)(2)(B) further provides that, in order to be eligible for asylum, an alien must demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." This one-year filing deadline may be waived if "the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." Id. at § 1158(a)(2)(D). Usman continues to press his claim that his "inability to adequately articulate his

claims in the English language and his ignorance of the United States asylum system prevented him from submitting an asylum application" within the one-year filing deadline. He also argues that he qualified for the "changed circumstances" exception because of an ostensibly worsening human rights situation in Pakistan.

However, "[w]e have no jurisdiction to review the Attorney General's determination that an asylum application is untimely and unexcused by circumstances." Lutaaya v. Mukasey, 535 F.3d 63, 69 (1st Cir. 2008); see 8 U.S.C. § 1158(a)(3) (providing that "[n]o court shall have jurisdiction to review any determination of the Attorney General" on an alien's compliance with the one-year time limit). Usman attempts to avoid this rule by invoking 8 U.S.C. § 1252(a)(2)(D), which states that "[n]othing in . . . this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." However, we have repeatedly held that "[t]o trigger our jurisdiction" under this provision, "the putative constitutional or legal challenge must be more than a disguised challenge to factual findings." Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007); see also Lutaaya, 535 F.3d at 69; Melhem v. Gonzales, 500 F.3d 78, 81 (1st Cir. 2007). Thus, unless a petitioner can identify a colorable, non-frivolous "legal or constitutional defect in the decision, this Court lacks

jurisdiction to review the BIA's determination that a petition for asylum was untimely or that there were no changed or extraordinary circumstances that might have justified considering the application." Rashad, 554 F.3d at 5. Moreover, we have explicitly held that our lack of jurisdiction over denials of asylum applications on timeliness grounds does not, in and of itself, violate due process, and thus the portion of Usman's argument that purports to identify a due process violation based on 8 U.S.C. § 1158(a)(3)'s "complete preclusion of review" must fail. Hana v. Gonzales, 503 F.3d 39, 44 (1st Cir. 2007).

Nevertheless, Usman also insists that he was deprived of "the right to a fair hearing guaranteed by due process" because the IJ did not "fully evaluate" his claims for asylum and for waiver of the one-year filing deadline. However, we have rejected this exact claim from petitioner's counsel on multiple occasions. See, e.g., Rashad, 554 F.3d at 5 (rejecting petitioner's claim that agency's failure to provide "a fair and efficient procedure for determining the validity of his persecution claim and failure to fully evaluate his exceptions to the one (1) year statute of limitation" constituted a due process violation); Jamal v. Mukasey, 531 F.3d 60, 65 (1st Cir. 2008) (rejecting as frivolous appellant's argument that IJ's failure to make an individualized analysis to determine whether he had presented sufficient evidence to qualify for one of the exceptions to the one-year filing deadline was a violation of due

-10-

process).  See also Lutaaya, 535 F.3d at 69 (petitioner's argument that IJ violated her due process rights by failing to consider her testimony or allow her to "fully explain" the reasons that she could not meet the one year deadline was not a colorable constitutional claim).  Usman does not identify any specific deficiencies in his hearing or BIA appeal that would give rise to a due process violation.  Instead, as in Rashad, Usman's claim "is another way of saying that the agency got the facts wrong, which is simply a factual claim masqueraded as a legal challenge that certainly cannot defeat the operation of the jurisdiction-stripping provision."  554 F.3d at 5.

## III.

Usman also sought withholding of removal and protection under the CAT.  These claims place a higher burden of proof on the petitioner than a counterpart claim for asylum, requiring the petitioner to prove that it is "more likely than not" he would face persecution or torture if he returned to his home country. Guillaume v. Gonzales, 504 F.3d 68, 71 n.2 (1st Cir. 2007).

However, the government argues that Usman has waived any potential challenge to the denial of his request for withholding of removal by not mentioning it in his opening brief.  See, e.g, Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 88 (1st Cir. 2008) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quotation marks and

citation omitted)). We agree. Although one of the headings in Usman's brief alleges error in the IJ's finding that he had not established that it was "more likely than not that [he] would be persecuted or tortured," this heading introduces an argument aimed at the merits of Usman's asylum claim. An argument that the petitioner is entitled to asylum does not properly raise the issue of withholding of removal. As noted, the standard of proof for withholding of removal is even more stringent. The three-sentence paragraph in Usman's brief that asserts, in a conclusory fashion, that the petitioner "made [the] showing" that established his eligibility for withholding of removal "through a combination of written evidence and oral testimony" is also insufficient to make the withholding issue appropriate for our consideration. See, e.g., Sok v. Mukasey, 526 F.3d 48, 52 (1st Cir. 2008) (deeming CAT claim waived where petitioner made "no argument with respect to [the claim] beyond an introductory assertion that '[t]he record establishes the merits of [her] claims for withholding of removal, and protection pursuant to the [CAT]'"); Tejada-Batista v. Morales, 424 F.3d 97, 103 (1st Cir. 2005) ("An argument not seriously developed in the opening brief is forfeit . . . .").

To succeed on his preserved CAT claim, Usman "would need to prove it more likely than not that he would suffer torture at the hands of the government or with the consent or acquiescence of the government" if returned to Pakistan. De Oliveira v. Mukasey, 520

-12-

F.3d 78, 79 (1st Cir. 2008). The BIA affirmed the IJ's conclusion that Usman had not presented any such evidence. The IJ had found specifically that Usman "made no claim that he would be tortured by anyone in the country of Pakistan were he to be returned to that country," and "certainly" that he had not alleged that "he would be tortured at the instigation of or with the consent of public officials or persons acting in an official capacity in the country of Pakistan." Now, Usman argues that the attacks he suffered at the hands of Islamic fundamentalists in Pakistan constituted torture and that the Pakistani government had "effectively given its consent for such abuse to continue." He claims that "past torture" is evidence of "future" torture.

Although we doubt that the incidents described by Usman at his hearing qualified as torture under the applicable regulation, see 8 C.F.R. § 208.18(a)(1), Usman's failure to present any evidence that the abuse he suffered occurred with the consent of the Pakistani government ultimately dooms his claim. Indeed, the notion of government complicity is belied by the IJ's supportable finding, based on the Country Report, that the Pakistani government had "been active in attempting to suppress Islamic extremists" within its borders. Therefore, we uphold the BIA's conclusion that Usman is ineligible for relief under the regulations implementing the CAT.

The petition for review is denied.

-13-