**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 13-1721

MARIA CHRISTINA MONSALVE,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Circuit Judge</u>,
Souter,[*] <u>Associate Justice</u>,
and Stahl, <u>Circuit Judge</u>.

<u>Jeffrey B. Rubin</u> and <u>Law Offices of Jeffrey B. Rubin, P.C.</u> on brief for petitioner.
<u>David H. Wetmore</u>, Office of Immigration Litigation, Civil Division, Department of Justice, <u>Stuart F. Delery</u>, Assistant Attorney General, Civil Division, and <u>John S. Hogan</u>, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

July 7, 2014

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>.** Maria Christina Monsalve, a native and citizen of Colombia, petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from an order of an Immigration Judge (IJ) denying her applications for relief from removal. We dismiss in part and deny in part the petition.

## I.

The evidence and testimony provided by Monsalve during the administrative proceedings show the following facts, as well as factual disputes of no consequence to the resolution of her claims. Between 2003 and 2005, Monsalve lived in Colombia with her boyfriend, who fell in with the wrong crowd and became involved in illegal activities. The exact subjects of his unlawful behavior are uncertain, however, as is the possibly paramilitary activity of his associates and their reliance on protection by corrupt police.

What is certain is that Monsalve learned of the boyfriend's criminal dealings and confronted him about them, even threatening to call the authorities. This exchange occurred in their house, where both Monsalve's father and cousin were asleep elsewhere at the time. The boyfriend drew a gun, and on one account of the facts Monsalve was struggling for possession of it when it fired twice, hitting the boyfriend. In another version, Monsalve got the gun and ran to the room where her father was sleeping, where she shot the boyfriend as he closed in on her.

-2-

By all accounts, Monsalve, her father, and her cousin took the victim to the hospital, and he died of his wounds there. The police questioned and arrested all three, though eventually the killing was ruled to be self-defense and charges were dropped.

After Monsalve's release, the boyfriend's former associates began to harass her and her family, demanding that they hand over possessions and even threatening them with death. Monsalve went into hiding and, in 2007, illegally entered the United States.

In 2009, she was charged with removability. She conceded this but applied for asylum, withholding of removal, protection under the Convention Against Torture (CAT), and voluntary departure, arguing that she feared harm from the criminal associates if she were to return to Colombia. While her applications were pending, Monsalve's cousin, who was in the house the night of the shooting, was killed, allegedly by the boyfriend's gang.

The IJ denied Monsalve's asylum application as untimely, having been filed more than one year after she arrived in the United States. Her application for withholding of removal was denied on two grounds. First, the IJ discredited those portions of her testimony connecting the former associates to either a paramilitary group or a corrupt police force, because these allegations had not appeared in Monsalve's previously submitted

-3-

materials.  Alternatively, the IJ concluded that, even crediting the testimony, at most it demonstrated that she faced threats of a personal vendetta, which is not one of the statutorily protected grounds required for withholding of removal.  The IJ also denied Monsalve's CAT claim, but granted her the option of voluntary departure on condition that she post a bond.

She appealed to the BIA, which adopted and affirmed the IJ's decision with respect to the applications for asylum and withholding of removal. The BIA noted that Monsalve did not challenge the IJ's denial of her CAT claim, and thus waived it.[1] And because she had failed to post the required bond, the BIA refused to reinstate the voluntary departure period.[2]  This petition for review followed.

## II.

The petition raises two issues.  Monsalve says that, because she showed extraordinary circumstances, the BIA and the IJ erred in denying her asylum application as untimely.  And as to the application for withholding of removal, she contends that it was error for the BIA and the IJ to discredit her testimony.  We lack

---

[1] Although Monsalve's petition to this court cursorily mentions her CAT claim, her failure to raise it before the BIA precludes our review.  See Sela v. Mukasey, 520 F.3d 44, 47 (1st Cir. 2008).

[2] Monsalve does not press the issue of voluntary departure in her petition to his court.

jurisdiction to entertain the first argument and we find the second beside the point.

Because Monsalve failed to file her asylum application within one year of entering the United States, she must demonstrate "either the existence of changed circumstances which materially affect [her] eligibility for asylum or extraordinary circumstances relating to the delay." 8 U.S.C. § 1158(a)(2)(D); see also id. § 1158(a)(2)(B). The BIA and the IJ concluded that Monsalve demonstrated neither. While Monsalve's petition is silent as to whether circumstances have changed, it argues that the BIA and the IJ failed to credit her limited English, lack of access to counsel, and distress over the incidents in Colombia as adding up to extraordinary circumstances sufficient to excuse her inaction by the deadline.

We lack jurisdiction to review a determination that an untimely asylum application does not qualify for an exception to the deadline, unless that determination raises a constitutional claim or a question of law. Id. §§ 1158(a)(3), 1252(a)(2)(D). A reviewable legal issue may arise where, for instance, the IJ employs the wrong standard, such as requiring that circumstances be "exceptional" rather than "extraordinary." See Lumataw v. Holder, 582 F.3d 78, 85 (1st Cir. 2009) (citing Tariq v. Keisler, 505 F.3d 650, 656 (7th Cir. 2007)). But Monsalve points to no constitutional or legal claim raised by the factual determination

-5-

that her circumstances were not extraordinary, see Lordes v. Mukasey, 288 F. App'x 712, 715 (1st Cir. 2008), and we accordingly have no jurisdiction to review.

We do have jurisdiction to review the denial of Monsalve's application for withholding of removal, however, but her argument that the BIA and the IJ erred in discrediting her testimony is unavailing. This is so because the denial of her withholding of removal application rested on an alternative foundation, which she fails to challenge and which is well supported. Both the BIA and the IJ determined that, even if her testimony were fully credited, Monsalve failed to show that the threats she faced in Colombia were tied to one of the grounds efficacious under the statute: race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1231(b)(3)(A).

Substantial evidence supports those determinations that any threats against Monsalve are not based on one of the protected grounds. See Costa v. Holder, 733 F.3d 13, 16-17 (1st Cir. 2013) (standard of review is for substantial evidence). She claims that the harm she faces is motivated by her late boyfriend's associates' desire to avenge his killing, which occurred in the course of an altercation that was strictly personal in nature, as any ensuing resentment likewise appears to be. Nothing in the record compels the conclusion that the threats against Monsalve are based on her

race, religion, nationality, membership in a social group, or political opinion.  Here, even assuming for the sake of argument that the BIA and the IJ erred in discrediting Monsalve's testimony, the denial of her application must still stand on the alternative ground that she failed to demonstrate a necessary condition of entitlement to withholding of removal.

III.

The petition for review is DENIED in part and DISMISSED in part.