**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

---

No. 07-2361

FNU ODMAR,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

---

Before

Lynch, <u>Chief Judge</u>,
Boudin, <u>Circuit Judge</u>,
and Schwarzer,[*] <u>Senior District Judge</u>.

---

    <u>William A. Hahn</u> with whom <u>Hahn & Matkov</u> was on brief for petitioner.
    <u>Gregory K. Katsas</u>, Acting Assistant Attorney General, Civil Division, <u>Cindy S. Ferrier</u>, Senior Litigation Counsel, and <u>Tracie N. Jones</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, on brief for respondent.

---

October 1, 2008

---

[*]Of the Northern District of California, sitting by designation.

SCHWARZER, District Judge. Fnu Odmar, a native and citizen of Indonesia, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from the denial of asylum and withholding of removal by an Immigration Judge ("IJ").[1] Odmar contends that the BIA erred in determining (1) that there was no material change in circumstances establishing an exception to the requirement that asylum applications be filed within one year of arrival in the United States, and (2) that he was not entitled to withholding of removal. Because we lack jurisdiction to review the BIA's determination regarding the timeliness of Odmar's asylum application and substantial evidence supports the denial of withholding, we dismiss Odmar's petition for review in part and deny it in part.

## I. BACKGROUND

Odmar entered the United States on April 4, 1999, as a crew member authorized to remain for no more than twenty-nine days. On April 14, 2003, Odmar was served with a Notice to Appear charging him as removable pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B). Odmar filed a defensive asylum application on July 28, 2005, based on his

---

[1] Odmar has waived any challenge to the denial of relief under the Convention Against Torture ("CAT") by not raising it in his opening brief. See Levin v. Dalva Bros., Inc., 459 F.3d 68, 76 n.4 (1st Cir. 2006).

2

Christianity.

In his testimony before the IJ and in his asylum application, Odmar described various incidents of harm in support of his applications for asylum, withholding of removal, and CAT relief. The IJ found Odmar credible. Odmar described being fearful after witnessing the 1984 clash between Muslims and Christians in the Tanjung Priok area of Jakarta. In June 1996, a Muslim group leader interrupted a home prayer service in which Odmar participated and demanded that the attendees stop their prayers. In December 1998, Odmar witnessed a Muslim group attack a man on a bus identified as Christian on his national identification card, which indicates religion. Odmar described that members of Muslim organizations solicited him, but not his Muslim neighbors, for donations, and that he felt pressured to contribute. Odmar also testified that his mother and sister continue to reside in Indonesia and practice Christianity without problems.

At the conclusion of the March 2, 2006, hearing, the IJ denied all relief except voluntary departure. The IJ determined that Odmar did not file an asylum application within one year of arriving in the United States, and that he did not qualify for an exception based on materially changed circumstances in Indonesia. The IJ denied withholding of removal finding that Odmar did not show that it was more likely than not that he would be persecuted

3

on account of his Christianity if he returned to Indonesia. The IJ found that Odmar's experiences did not rise to the requisite level of past persecution. The IJ also noted that Odmar testified that his mother, sister, and brother-in-law, who were also Christian, worshiped without any interference from Muslims or the government.

Odmar timely appealed the IJ's decision to the BIA. The BIA issued a decision on August 3, 2007, affirming the denial of all relief and the grant of voluntary departure. The BIA found that Odmar was ineligible for asylum based on his failure to file within the statutory one-year deadline, and his inability to establish "any changed circumstances in Indonesia affecting his eligibility or extraordinary circumstances relating to the delay in filing an application." The BIA observed that although Odmar claimed that conditions in Indonesia had been deteriorating since his 1999 departure, he did not apply for asylum until six years later in 2005, and he did not identify "any new 'changes' that occurred in his native country within a reasonable time of his filing that related to his claim for relief, and excused his delay in filing."

The BIA found that Odmar's experiences were not sufficiently severe to establish past persecution. The BIA denied withholding, determining that there was no objective basis in the record to conclude that it was more likely than not that Odmar would be persecuted if he returned to Indonesia. The BIA also

4

agreed with the IJ's determination that Odmar was not entitled to CAT relief.

Odmar filed a timely petition for review.

## II.  ANALYSIS

### A.  Timeliness of Odmar's Asylum Application

We lack jurisdiction to review the denial of Odmar's asylum application based on the BIA's determinations that Odmar did not file his application within the one year deadline and failed to demonstrate changed or extraordinary circumstances excusing his late filing.  See 8 U.S.C. § 1158(a)(3); Hayek v. Gonzales, 445 F.3d 501, 506-507 (1st Cir. 2006).  Under the REAL ID Act, this court does retain jurisdiction to review constitutional claims or questions of law raised in a petition for review. 8 U.S.C. § 1252(a)(2)(D).  The BIA's findings regarding timeliness and changed or extraordinary circumstances, however, are usually factual determinations outside the court's jurisdiction.  See Hayek, 445 F.3d at 506-507.

Odmar contends that we retain jurisdiction because he raises a question of law.  He argues that the IJ used the incorrect legal standard by concluding that "an increase in the intensity in the circumstances in a particular country does not constitute a material change as contemplated by the regulations," and that the BIA "affirmed and simply cited the statute and regulation."

This argument is unavailing.  Though the BIA affirmed the

5

IJ, the BIA supplied its own reasoning and did not simply adopt the reasoning of the IJ. Based on the record evidence, the BIA concluded that Odmar had not identified "any new 'changes' that occurred in his native country within a reasonable time of his filing that related to his claim for relief, and excused his delay in filing." Contrary to Odmar's argument, this determination did not involve the application of an erroneous legal standard; rather, it is a factual determination that Odmar did not demonstrate that circumstances in Indonesia had changed such that his untimely application should be excused. Determinations of changed circumstances are generally factual determinations, Hayek, 445 F.3d at 506-507, and Odmar has not presented a convincing argument that the agency's determination here was not of a factual nature. This court therefore lacks jurisdiction to review Odmar's claim that the BIA erred in finding that his untimely application was not excused.

## B. Withholding of Removal

We review the BIA's findings of fact for substantial evidence. See Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004). The BIA's findings are upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," and are reversed only if "the record evidence would compel a reasonable factfinder to make a contrary determination." Id. (internal quotation marks and citations omitted).

6

To qualify for withholding of removal, Odmar must either (1) show that he suffered past persecution on account of a protected ground, creating a rebuttable presumption of future persecution; or (2) demonstrate a clear probability of persecution, which requires a showing that it is "more likely than not" that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-31 (1987); Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005).

1. Past Persecution

Sufficient evidence supports the BIA's determination that Odmar's experiences do not rise to the level of past persecution. His home prayer service was disrupted, he was solicited for money, and he witnessed physical confrontations. Odmar never suffered any physical harm, was never confined, and was never directly threatened. Occasional mistreatment or a generalized fear of mistreatment do not, on their own, constitute persecution. See Sombah v. Mukasey, 529 F.3d 49, 50-52 (1st Cir. 2008) (Christian Indonesian did not establish past persecution where applicant hosted monthly prayer meetings and the attendees' cars were vandalized, her church was burned down, her husband was threatened on a bus, and Muslim neighbors killed her dog); Susanto v. Gonzales, 439 F.3d 57, 59-60 (1st Cir. 2006) (Chinese Christian Indonesian did not establish past persecution where she was

7

mugged, her home was vandalized during the 1998 riots, her church was bombed, and a Muslim crowd threatened and threw stones at her).

Odmar's contention that the IJ failed to take into account the totality of the circumstances and violated due process by ignoring evidence of country conditions between 2002 and 2005 is meritless. In his decision, the IJ specifically refers to evidence of country conditions from this time period, including news articles, State Department reports, and other reports submitted in Exhibit 6, and materials postdating September 2005. See Sombah, 529 F.3d at 51-52. The parties also addressed the 2005 International Religious Freedom Report during the hearing before the IJ.

## 2. Future Persecution

Substantial evidence supports the BIA's finding that Odmar did not establish that it was more likely than not that his life or freedom would be threatened on account of his Christianity based on country conditions and Odmar's testimony that his family remains unharmed in Indonesia. See Sipayung v. Gonzales, 491 F.3d 18, 20 (1st Cir. 2007) (no objectively reasonable fear of future persecution where family remained in Indonesia unharmed and able to safely practice their religion, and country reports indicated improved conditions for Christians); Ferdinandus v. Gonzales, 504 F.3d 61, 63 (1st Cir. 2007) (safety of petitioner's children, who still live and attend church in Indonesia, undercuts her argument

8

that she will suffer future persecution).

Odmar also argues that direct government involvement triggers "heightened scrutiny" of his claims. We need not consider this argument because Odmar failed to present it to the BIA. <u>See Sombah</u>, 529 F.3d at 52 (rejecting same argument).

We *dismiss* the petition for review in part for lack of jurisdiction and *deny* it in part.

9