# United States Court of Appeals
## For the First Circuit

No. 08-1757

HENDERSON M. LUMATAW,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*]
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Tashima,[**] Senior Circuit Judge,
and Lipez, Circuit Judge.

William A. Hahn and Hahn & Matkov, on brief for petitioner.
Janice K. Redfern, Senior Litigation Counsel, Office of Immigration Litigation, Michael F. Hertz, Acting Assistant Attorney General, and Linda S. Wernery, Assistant Director, on brief for respondent.

September 9, 2009

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. is substituted for former Attorney General Michael B. Mukasey as respondent.

[**] Of the Ninth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**. Petitioner Henderson M. Lumataw, a native and citizen of Indonesia, seeks review of a decision issued by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ's") denial of his application for political asylum, withholding of removal and protection under the Convention Against Torture ("CAT").[1] Lumataw entered the United States in 1995 and filed his I-589 application for asylum in 2005 on the basis of past persecution and fear of future persecution in Indonesia on account of his religious status as a practicing Christian. The BIA affirmed the IJ's denial of asylum on the ground that Lumataw failed to allege sufficient changed circumstances in Indonesia to excuse his failure to timely file his asylum application within one year of his 1995 arrival. The BIA also agreed with the IJ's conclusion that Lumataw had not established past persecution and that he would not "more likely than not" be persecuted in the future if he returned to Indonesia.

In this petition for review, Lumataw challenges the agency's determinations on the merits of his asylum claim, but also alleges that the BIA erred as a matter of law in holding his application to be untimely because the one-year filing deadline had not yet been enacted into law at the time of his initial entry. After careful review of the record, we hold that the IJ and BIA

---

[1]  Since Lumataw did not raise his CAT claim in his appellate brief, that basis for his application is deemed waived. Oroh v. Holder, 561 F.3d 62, 64 n.1 (1st Cir. 2009).

committed prejudicial legal error in assessing the timeliness of Lumataw's petition.  We thus grant the instant petition and remand.

## I.  Background

### A. Factual Background

Henderson M. Lumataw is a 35 year-old citizen and native of Indonesia.  He identifies himself as a Christian Protestant.  The incident upon which Lumataw's claim of past persecution is premised took place in Indonesia in August 1995.  On that date, while traveling through Indonesia, Lumataw was accosted by a thief who was subsequently joined by three additional attackers.  Lumataw identified these individuals as Muslims due to their headdresses and sarong attire.  Seeing the cross necklace around Lumataw's neck, one of the attackers accused Lumataw of being Christian.  The attacker pointed a knife at Lumataw's neck and threatened to kill him, saying "I want to kill you Christian."  Ultimately, Lumataw escaped the attackers after they had robbed him of his cross necklace.  Lumataw was very shaken by the incident.  Thereafter, he left Indonesia for the United States.

Lumataw entered the United States on September 12, 1995 on a non-immigrant visitor with authorization to remain for six months.  According to Lumataw, he overstayed out of fear of being threatened, tortured, or killed if he returned to Indonesia, because of his status as a Christian.  Lumataw explained, however, that he did not apply for asylum right away because the

-3-

interreligious conflict between Muslims and Christians was not as perilous in 1995 as it would later become. Country conditions evidence on the record, including U.S. State Department Human Rights Reports, confirms the increase in interreligious tensions in Indonesia in the late 1990s and early 2000s. On October 5, 2002, in New Hampshire, Lumataw married Vonnie Golioth ("Golioth"), also a Protestant Christian of Indonesian nationality.

## B. Procedural History

On January 27, 2003, Golioth applied for asylum and Lumataw was included in his wife's application. On April 11, 2003, the Department of Homeland Security ("DHS") served him with a Notice to Appear ("NTA") charging him with being removable under 8 U.S.C. § 1227(a)(1)(B), as an alien who remained in the United States for a time longer than permitted. In 2005, Lumataw filed his own application for asylum under § 208 of the Immigration and Nationality Act ("INA"), and in the alternative, withholding of removal under § 241(b)(3) of the INA and under the CAT.[2]

### 1. The IJ Decision

On January 26, 2006 a hearing was held before an IJ on the merits of Lumataw's application. In addition to Lumataw's testimony, Golioth also testified about incidents of violence and

---

[2]　Lumataw had requested that the IJ consolidate his separate asylum application with his wife's application, but the request was denied.

intimidation inflicted on Christians by Muslims in Indonesia. The IJ issued an oral decision that day.

The IJ identified the "timeliness" of Lumataw's asylum application as the threshold question for the court, noting that Lumataw's asylum application was "filed approximately 10 years after he entered the United States."[3] The IJ reasoned that "while periods of social conflict can intervene between [Lumataw's] arrival in the United States and the time he applied for asylum, [Lumataw] has not established that circumstances have changed to the point where his eligibility for asylum has been materially affected." Finding no evidence of "a change in circumstances that would justify a late filing in this case," the IJ held that Lumataw's application for asylum was untimely.

As to the material aspects of Lumataw's remaining withholding of removal claim, the IJ found Lumataw to be generally credible, but concluded that even if Lumataw's attackers were motivated by animosity towards Christians, one isolated attack, far from Lumataw's home or workplace, with no injury, did not constitute past persecution. Finding that Lumataw had not established past persecution, no presumption of future persecution

---

[3] As explained infra, normally, an asylum application must be filed within one-year of an alien's arrival, unless he arrives prior to April 1, 1997, in which case, the filing deadline is one-year from that date. See 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a)(2)(ii). Exceptions do apply. See 8 U.S.C. § 1158(a)(2)(D).

-5-

applied either. Furthermore, the IJ concluded that Lumataw could not prove it was "more likely than not" that he would be persecuted if he returned to Indonesia, and thus, the IJ also denied his application for withholding of removal under section 241(b)(3) of the INA. The IJ also noted that country conditions in Indonesia do not support the conclusion that Lumataw would "more likely than not" be persecuted, should he be removed to Indonesia. Lumataw's application for CAT relief was also denied. Finally, the IJ concluded that Lumataw was eligible for voluntary departure.

## 2. The BIA Decision

On May 16, 2008, the BIA dismissed Lumataw's appeal. On the issue of timeliness, the BIA "agree[d] with the [IJ] that [Lumataw] had failed to establish sufficient changed circumstances in Indonesia to excuse his failure to timely file his application for asylum." Although Lumataw had argued to the BIA that the IJ had failed to acknowledge his inclusion in his wife's 2003 application, the BIA held that Lumataw "failed to demonstrate that the [IJ's] omission of this fact supports a finding that his failure to file his application for asylum within one year of his arrival in the United States in 1995 should be excused based on changed circumstances in Indonesia."

As to the merits of Lumataw's alternative withholding of removal claim, the BIA adopted the reasoning of the IJ that Lumataw had failed to establish either past persecution or that he would

-6-

"more likely than not" be persecuted in the future, so as to support withholding of removal. The BIA also rejected his claims under the CAT.

A timely petition for review in this court followed. In this petition Lumataw argues that the IJ and BIA erred as a matter of law in holding his asylum application to be untimely, as those decisions rested on Lumataw's failure to file within one year of his initial entry in 1995 when no filing deadline had yet been enacted into law, as well as a failure to consider his inclusion in his wife's earlier-filed petition. Lumataw further argues that the IJ and BIA erred in ruling that Lumataw failed to make out a case of past persecution. Finally, Lumataw argues that should we remand on the first issue, he should be entitled, on remand, to present an asylum claim based on "well-founded fear of future persecution."

## II. Discussion

### A. Applicable Law

"To establish eligibility for asylum, an alien must prove either past persecution, which gives rise to an inference of future persecution, or establish a well founded fear of future persecution on account of her race, religion, nationality, membership in a social group, or political opinion." Hem v. Mukasey, 514 F.3d 67, 69 (1st Cir. 2008). In contrast, "[t]o qualify for withholding of removal, an alien must show that, more likely than not, he faces persecution on account of one of [these] five protected grounds,

-7-

. . . should he return to his homeland." Pan v. Gonzales, 489 F.3d 80, 85-86 (1st Cir. 2007) (emphasis added); see also 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.16(b)(2).  "This 'more likely than not' standard is harder for an alien to satisfy than the 'reasonable possibility' standard for showing a well-founded fear of future persecution in asylum cases." Pan, 489 F.3d at 86.

Unlike a withholding of removal application, which is not subject to a filing deadline, see 8 C.F.R. § 1208.4(a), "[a]n asylum application must ordinarily be filed 'within one year after the date of the alien's arrival in the United States,' or by April 1, 1998, whichever is later." Oroh, 561 F.3d at 66 (internal citations and quotation marks omitted); see also 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a)(2)(ii) (explaining that the "1-year period shall be calculated from the date of the alien's last arrival in the United States or April 1, 1997, whichever is later").  Prior to the enactment of this one-year bar, effective April 1, 1997, there was no mandated time limit for filing applications for asylum.  See In re F-P-R-, 24 I. & N. Dec. 681, 685 (B.I.A. 2009) (referencing Congress "enact[ment] [of] the 1-year filing period in 1996.").

An application for asylum may be considered beyond the one-year deadline, however, "if an applicant demonstrates 'changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in

-8-

filing.'" Oroh, 561 F.3d at 66 (citing 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. §§ 1208.4(a)(4), (5)); Rashad v. Mukasey, 554 F.3d 1, 4 (1st Cir. 2009). "Changed circumstances" may include "[c]hanges in conditions in the applicant's country of nationality" or "[c]hanges in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including changes in applicable U.S. law and activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk." 8 C.F.R. § 1208.4(a)(4)(i). "Extraordinary circumstances" refers to "events or factors directly related to the failure to meet the 1-year deadline." 8 C.F.R. § 1208.4(a)(5). An applicant attempting to demonstrate changed or extraordinary circumstances must also demonstrate that he "filed the application 'within a reasonable period' given those circumstances." Oroh, 561 F.3d at 66 (quoting 8 C.F.R. §§ 1208.4(a)(4), (5)).

## B.  Standard of Review

"Usually, this court confines its review to the BIA's order that is being challenged by the petitioner." Rashad, 554 F.3d at 4. "However, when as here, the BIA adopts the decision of the IJ, and provides some analysis of its own, the Court reviews both decisions." Id.

We will uphold the factual findings of the IJ and BIA "if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Acevedo-Aguilar v.

<u>Mukasey</u>, 517 F.3d 8, 9 (1st Cir. 2008) (internal quotation marks omitted). Under the substantial evidence standard, this court may not reverse the decision below unless the record compels a contrary conclusion. <u>See</u> <u>INS</u> v. <u>Elías-Zacarías</u>, 502 U.S. 478, 481 (1992) (applying this standard); <u>Acevedo-Aguilar</u>, 517 F.3d at 9 (same). Whether a petitioner has demonstrated past persecution is usually a factual determination subject only to the highly deferential substantial evidence standard. <u>See</u> <u>Elías-Zacarías</u>, 502 U.S. at 483-84; <u>Pangemanan</u> v. <u>Holder</u>, 569 F.3d 1, 3 (1st Cir. 2009); <u>Silva</u> v. <u>Gonzales</u>, 463 F.3d 68, 72 (1st Cir. 2006).

Certain agency factual determinations are, however, by statute excluded from judicial review. <u>See</u> 8 U.S.C. § 1158(a)(3).[4] As relevant to this appeal, § 1158(a)(3) "divests courts of jurisdiction to review determinations of timeliness or the applicability of exceptions to the one-year rule." <u>Oroh</u>, 561 F.3d at 66. "The only exception to this bright-line rule is contained in 8 U.S.C. § 1252(a)(2)(D), which carves out an exception allowing courts to review 'constitutional claims or questions of law.'" <u>Id.</u> at 62 (quoting <u>Hana</u> v. <u>Gonzales</u>, 503 F.3d 39, 42 (1st Cir. 2007)). To form the basis of judicial review under § 1252(a)(2)(D), the alleged "underlying constitutional or legal question must be

---

4   Specifically, 8 U.S.C. § 1158(a)(3) states that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)," with paragraph 2 governing various bars to asylum eligibility, including time limits for application and exceptions thereto.

colorable; that is, the argument advanced must, at the very least, have some potential validity." Pan, 489 F.3d at 84.

These deferential review standards "'do[] not . . . preclude a court from vacating the BIA's asylum determination and remanding a case for further consideration where the BIA's denial of asylum was based upon an error of law." Rojo v. Mukasey, 297 Fed. App'x 709, 711 (9th Cir. 2008) (unpublished) (quoting Kotasz v. INS, 31 F.3d 847, 851 (9th Cir. 1994). The harmless error doctrine, however, informs the propriety of remand in the face of legal error. See Nadal-Ginard v. Holder, 558 F.3d 61, 69 n.7 (1st Cir. 2009) (citing support for proposition that harmless error doctrine applies to judicial review of immigration decision).

## C. Petition for Review

### 1. Timeliness

Lumataw argues that the IJ and BIA erred as a matter of law in assessing the timeliness of his I-589 application for asylum. This is because the BIA reasoned that Lumataw did not warrant an exception to the one year asylum filing deadline as he did not file his application within one-year of entering the United States. However, in 1995, and for some years thereafter, there was no legal requirement that an alien file an asylum application within one year of entry -- a fact that neither the IJ nor BIA recognized. In fact, there was no deadline at all. Thus, by charging Lumataw for failing to file within one year of entry, the

-11-

IJ and BIA attributed years of delay to Lumataw for which he was not legally responsible. Lumataw argues that without even making a finding of when he was legally required to file for asylum, the BIA could not conduct any meaningful analysis of whether an exception was warranted.

Additionally, at his hearing before the IJ, Lumataw argued that because he had been included in his wife's January 2003 I-589 application for asylum, it is the January 2003 date, rather than the date of Lumataw's personal filing in 2005, that should be deemed the governing time for analyzing whether an exception to the one-year deadline applied. The IJ, however, erred as a matter of law, Lumataw argues, in failing to consider Lumataw's inclusion in his wife's 2003 application, noting only that petitioner filed ten years after his 1995 initial entry. Thus, the IJ's "ten year" comment constitutes legal error, in that it shows the IJ was mistaken as to both the start date and end dates for analyzing whether changed or extraordinary circumstances excuse Lumataw's delay. By adding years of additional delay to the analysis that did not belong, Lumataw argues that as a matter of law, neither the IJ nor BIA conducted an appropriate one-year exception analysis.

The government does not dispute Lumataw's claims of error, but argues that Lumataw is challenging the agency's factual determinations regarding timeliness, which we lack jurisdiction, pursuant to 8 U.S.C. § 1158(a)(3), to review. Recognizing that

-12-

legal or constitutional questions are nevertheless reviewable on appeal, see 8 U.S.C. § 1252(a)(2)(D); Lutaaya v. Mukasey, 535 F.3d 63, 69-70 (1st Cir. 2008), the government takes the position that Lumataw's claims do not raise legal questions. In support of its position, the government relies on decisions of this court holding that agency findings regarding timeliness and changed or extraordinary circumstances are usually factual determinations outside this court's jurisdiction. See Hayek v. Gonzales, 445 F.3d 501, 506-07 (1st Cir. 2006).

### a. Question of Law

The threshold issue is, thus, whether Lumataw has alleged a reviewable "question of law" 8 U.S.C. § 1252(a)(2)(D), or rather, a "question of fact" that is beyond our jurisdiction to review.

We have previously held that "discretionary or factual determinations continue to fall outside [our] jurisdiction" and that "BIA findings as to timeliness and changed circumstances are usually factual determinations." See Hayek, 445 F.3d at 507 (emphasis added & internal quotation marks omitted). However, this does not mean that this Court could never have jurisdiction over a timeliness determination. See Liu v. INS, 508 F.3d 716, 721 (2d Cir. 2007) (making this point). Rather, "[s]ome discretionary determinations do present underlying, reviewable questions of law." Khan v. Filip, 554 F.3d 681, 689 (7th Cir. 2009); see also Arif v. Mukasey, 509 F.3d 677, 680 (5th Cir. 2007) ("Although we have

-13-

jurisdiction to review a determination of timeliness that turns on a . . . question of law, we do not have jurisdiction to review determinations of timeliness that are based on findings of fact."). This is such a case.

A reviewable "question of law" may be raised where the agency used the "wrong legal standard" in coming to a determination on a discretionary decision. See Filip, 554 F.3d at 689; Liu, 508 F.3d at 721; Khan v. Gonzales, 495 F.3d 31, 35 (2d Cir. 2007); see, e.g., Tariq v. Keisler, 505 F.3d 650, 656 (7th Cir. 2007) (recognizing that we retain jurisdiction to determine whether the IJ erred in requiring "exceptional circumstances" instead of "extraordinary circumstances"). Similarly, a reviewable "question of law" is raised where the agency is charged with misconstruing its own regulations in reaching a decision. See Rotinsulu v. Mukasey, 515 F.3d 68, 72 (1st Cir. 2008) (explaining that "[a]n agency has an obligation to abide by its own regulations" and "[t]he failure to follow an applicable regulation may be a sufficient ground for vacation of an agency's decision, resulting in a remand"); Cardoso-Tlaseca v. Gonzales, 460 F.3d 1102, 1103-04 (9th Cir. 2006) (holding that the court had jurisdiction over alien's petition for review because the alien's claim that the BIA misconstrued a regulation so as to bar his motion to reopen presented a question of law); see also H. Rep. 109-72, at 175-76 (2006) (explaining in conference report on the REAL ID Act that use

-14-

of the term "question of law," as codified in § 1252(a)(2)(D) refers to a "question regarding the construction of a statute").

We agree with Lumataw that the question of whether the IJ and BIA applied the correct filing deadline in assessing the timeliness of his asylum application, constitutes a "question of law" underlying the agency's timeliness determinations. This is not a case where the alien alleges that "the agency got the facts wrong." Usman v. Holder, 566 F.3d 262, 268 (1st Cir. 2009) (citations omitted). The relevant facts, namely, the dates that Lumataw entered the country and filed for asylum individually, and as part of his wife's application, are not in dispute. Nor does Lumataw challenge the agency's exercise of its discretion in determining that no exception to the filing deadline was warranted. See Filip, 554 F.3d at 687 (describing determination under § 1158(a)(2)(D) as to whether changed or extraordinary circumstances justify filing delay as "'inherently discretionary' and not reviewable"). That analysis, Lumataw properly contends, may only be conducted on remand. See González v. Thomas, 547 U.S. 183 (2006). Rather, at its core, the question underlying Lumataw's challenge asks whether the agency misconstrued a statute, 8 U.S.C. § 1158(a)(2)(B), and its own regulation, 8 C.F.R. § 1208.4 (a)(2)(ii), in assessing the timeliness of Lumataw's asylum application. See In re F-P-R-, 24 I & N at 685 (holding that IJ "erred as a matter of law when he calculated the 1-year filing

-15-

period on the basis of the respondent's prior arrival in the United States in 1989 instead of the respondent's last arrival on July 20, 2005" (emphasis added)). Thus, we hold that Lumataw has "identif[ied] a colorable, non-frivolous 'legal . . . defect in the [IJ and BIA's timeliness] decision[s]'" that is within this court's jurisdiction to review. See Usman, 566 F.3d at 267 (quoting Rashad, 554 F.3d at 5).

Upon undertaking such review, we hold that the IJ committed legal error when he faulted Lumataw for untimely filing "10 years after he entered" in 1995 without recognizing either the absence of a filing deadline for the first few years of that period, or the undisputed record fact of Lumataw's inclusion in his wife's January 2003 asylum application. Cf. Arif, 509 F.3d at 680 (suggesting that petitioner's later-filed individual asylum application would be timely if she had timely filed jointly with her husband, but holding that it lacked jurisdiction to review agency conclusion that petitioner failed to show by "clear and convincing evidence" that prior joint application was filed within one year of entry); 8 C.F.R. § 1208.4(a)(4)(i)(C) (citing "[i]n the case of an alien who had previously been included as a dependent in another alien's pending asylum application," "the loss of [that] . . . relationship" as example of type of "changed circumstance[]" that would warrant exception to one-year filing rule).

We further hold that the BIA committed legal error in affirming the IJ's determination of untimeliness on grounds that Lumataw "fail[ed] to file his application for asylum within 1 year of his arrival in the United States in 1995," where Lumataw's application need only have been filed by April 1, 1998 in order to be timely. See 8 C.F.R. § 1208.4(a)(2)(ii) (explaining that the "1-year period shall be calculated from the date of the alien's last arrival in the United States or April 1, 1997, <u>whichever is later</u>" (emphasis added)).[5]

### b. Harmless error

Despite legal error, we would be required to affirm the agency's rejection of Lumataw's asylum claim as untimely if the evidence nevertheless "<u>compel[led]</u> a conclusion" that Lumataw's asylum application was untimely and no exceptions to the filing deadline applied. <u>Un</u> v. <u>Gonzales</u>, 415 F.3d 205, 209 (1st Cir. 2005) (emphasis added) (holding that IJ's failure to address past

---

[5] The government cites <u>Odmar</u> as analogous to the instant case. <u>See</u> <u>Odmar</u> v. <u>Mukasey</u>, 294 F. App'x 611, 612 (1st Cir. 2008) (unpublished) (concerning an alien who claimed that conditions in Indonesia had been deteriorating since his 1999 departure but who did not apply for asylum until six years later in 2005). The BIA found that Odmar was ineligible for asylum because he failed to file his application within the statutory one-year deadline and did not establish any changed or extraordinary circumstances to excuse his late filing. In denying Odmar's appeal, we held that "[d]eterminations of changed circumstances are generally factual determinations" and that Odmar had failed to prove otherwise. <u>Id.</u> at 613. However, the crucial distinction between <u>Odmar</u> and this case is that, in <u>Odmar</u>, there was no legal error found. It was because the agency's "determination did not involve the application of an erroneous legal standard," that review was precluded. <u>Id.</u>

persecution argument was not harmless error).[6]  Because "[w]e cannot say the evidence compels a conclusion either way," the error cannot be regarded as harmless.  Id. (citing El Moraghy v. Ashcroft, 331 F.3d 195, 205 (1st Cir. 2003)).

Although the government concedes that Lumataw was required to file his application within one year of April 1, 1997 rather than within one-year of his arrival in the United States, see 8 C.F.R. § 1208.4(a)(2)(B)(ii), it is nevertheless undisputed that Lumataw failed to filed his application by April 1, 1998 -- the proper asylum filing deadline applicable to him.  Therefore, the government argues, the IJ and BIA properly found that Lumataw's application was untimely and that no exceptions applied.  Moreover, the government argues, the BIA concluded that even considering Lumataw's wife's 2003 filing, Lumataw nonetheless failed to timely file for asylum.  Thus, the government suggests that any error in the agency's articulation of the proper filing deadline and initial filing date was harmless.

---

[6]  We note that the kinds of errors previously found "harmless" in the immigration context are more clearly non-prejudicial than the error in this case.  See, e.g., Mekhoukh v. Ashcroft, 358 F.3d 118, 130 (1st Cir. 2004) (holding that omission of evidence that "contains no information that materially affects the outcome of [the petitioner's] claims" constitutes harmless error (emphasis added)); Enwonwu v. Gonzales, 232 F. App'x 11, 14 (1st Cir. 2007) (stating error was harmless because it was "not substantive" when the BIA mistakenly said, "'[t]he respondent's appeal is dismissed,'" when the BIA meant to say the petitioner's appeal was sustained); Rotinsulu, 515 F.3d at 73 (noting that "material deficiency in the BIA's decision . . . would have been harmless" because claim was nevertheless definitively precluded).

-18-

At first blush, the government's argument carries substantial force. After all, taking April 1, 1998 as the proper date upon which Lumataw's one-year filing window expired, and January 2003, the date of his wife's filing, as the date of Lumataw's initial filing, Lumataw's application was nevertheless almost five years late. Lumataw argues, however, that by charging him with failing to file within one year of his 1995 entry, when no such requirement existed, and omitting consideration of his inclusion in his wife's 2003 application, the agency attributed to Lumataw an additional five years of delay for which he was not legally responsible. The agency's legal errors, Lumataw argues, which caused it to incorrectly identify the two dates relevant to a proper "changed" or "extraordinary" circumstances inquiry, meant that the agency never engaged in a meaningful analysis of whether the evidentiary record established circumstances that warranted an exception to the filing deadline.

Lumataw argues that, on remand, with the alleged legal errors corrected, the record evidence supports a finding that changed circumstances in Indonesia justify his delay in filing. See 8 U.S.C. § 1158 (a)(2)(D). Specifically, although the asylum filing deadline applicable to him was April 1998, Lumataw argues that the evidentiary record contains extensive documentation showing that it was from the late 1990s into the early 2000s that conditions for Christians in Indonesia progressively deteriorated,

-19-

a trend sparked by the overthrow of a long-time dictator who had previously suppressed religious tensions. In support of his position, Lumataw points to 2002 State Department Human Rights Reports on the record, which show an increase in interreligious violence and tension in Indonesia in the period immediately preceding his filing for asylum along with his wife. Specifically, the State Department's Religious Freedom Report for 2001-2002 acknowledged the substantial spike in violence in Indonesia during this period.[7] By including himself in his wife's January 2003 application, Lumataw argues, he can show that he filed his asylum application within a "reasonable time" after the changed circumstances in Indonesia occurred. See 8 C.F.R. § 1208.4(a) (4)(ii) (explaining that "changed circumstances" exception to one-year asylum filing deadline applies if applicant files "within a reasonable period" given the "changed circumstances"); Husyev v.

---

[7]        Religious intolerance increasingly was evident during the period covered by this report, and became a matter of growing concern to many Indonesians. Apart from the violence in the Moluccas and Central Sulawesi, religious intolerance occasionally manifested itself elsewhere in the country in the form of attacks on churches. During the second half of 2001, at least 30 churches were either forcibly closed or destroyed in Sulawesi, West Java, Jakarta, Yogyakart, Semarang, Aceh and Buru Island. There were no reports of any mosques being destroyed during this period covered by this report.

U.S. State Dept. International Religious Freedom Report, Indonesia, 2002.

Mukasey, 528 F.3d 1172, 1181 (9th Cir. 2008) (identifying the threshold question for the one-year exception analysis as whether the application was filed in a "reasonable period" after the changed circumstances occurred). Thus, the asylum claim would not be time-barred.

Ultimately, we are persuaded by Lumataw's argument. Although admittedly a close question, we cannot confidently say that this was a "harmless error, which did not affect the outcome of the IJ's decision . . . ." Butt v. Keisler, 506 F.3d 86, 90 (1st Cir. 2007). Lumataw indisputably did not file his asylum application by April 1, 1998, and thus, his application was in any event untimely. Yet, we conclude that by applying the proper timeliness analysis, the agency is more likely to have found circumstances that could excuse the untimely filing.

First, in terms of the IJ's failure to recognize Lumataw's inclusion in his wife's application, we recognize that it was just before the filing of that joint application in January 2003 that the State Department human rights reports, part of the record before the agency, document an upsurge in interreligious tensions and violence in Indonesia. See 8 C.F.R. § 1208.4(a)(4)(i) (including changes in conditions in the applicant's country within the meaning of "changed circumstances"). This change in circumstances could be found to have "materially affect[ed]" Lumataw's eligibility for asylum, so as to excuse his late filing.

-21-

See id. (referring to "circumstances materially affecting the applicant's eligibility for asylum"); Kojo v. Holder, No. 04-73163, 2009 WL 1396836, at *1 (9th Cir. 2009) (noting that "worsening violence towards Christians [in Indonesia] and the increasingly ineffective response from the government . . ." may constitute changed conditions justifying [petitioner's] untimely application" for asylum, filed in 2002 rather than 1998, and remanding to IJ for appropriate determination). Moreover, while what constitutes a "reasonable time" is nowhere defined with exactitude, at least two members of the BIA have suggested that, barring extraordinary circumstances, "'a reasonable period' for bringing an asylum claim based on 'changed circumstances' is . . . 1 year from the point at which the circumstances changed." In re G-C-L-, 23 I. & N. Dec. 359, 364 (B.I.A. 2002) (Pauley, Board Member, dissenting). This proposition of one year as a bench mark for what constitutes a "reasonable time" supports the notion that had Lumataw's 2003 derivative application filing date been taken into account, in light of the 2002 events in Indonesia, the agency could have found that Lumataw filed within a reasonable time after "changed circumstances" in Indonesia arose.

Moreover, even if the BIA is regarded as having partially "corrected" the IJ's error with respect to the non-consideration of

the 2003 derivative filing,[8] it nevertheless perpetuated the IJ's error regarding the filing deadline applicable to Lumataw, when it cited his failure to apply within one year of his 1995 arrival.[9] Thus, the BIA's determination that no exceptions justified the untimely filing was erroneously premised on an at least an eight-year delay. But as explained above, Lumataw cannot be charged, as a matter of law, for the period of delay prior to the enactment of the one-year filing deadline.

Ultimately, the question of whether changed or extraordinary circumstances exist to excuse an alien's failure to meet the deadline for filing an asylum application is a highly fact-specific inquiry requiring an individualized analysis of the facts of the particular case. Matter of Y-C-, 23 I. & N. Dec. 286, 287-88 (B.I.A. 2002).[10] And, inevitably, justifying an eight or ten

_____

[8] The BIA stated that "[w]hile the respondent asserts that the [IJ] did not acknowledge that his wife filed an application in 2003, which included the respondent, the respondent failed to demonstrate that the [IJ's] omission of this fact supports a finding that his failure to file his application for asylum within 1 year of his arrival in the United States in 1995 should be excused . . . ." (emphasis added). This suggests that unlike the IJ, the BIA took the 2003 filing into account. However, it nevertheless misstated the applicable filing deadline.

[9] To the extent that the BIA adopted the findings and reasoning of the IJ, we review the decision of the IJ. Sukwanputra v. Gonzales, 434 F.3d 627, 631 (3d Cir. 2006). Insofar as the BIA set forth its own opinion, however, we review its reasoning. Id.

[10] See also I.N.S. Asylum Officer Training Manual: One Year Filing Deadline (Nov. 2001), available at http://www.asylumlaw.org/docs/united_states/asylum_officer_traini ng_oneyear_112001.pdf (hereinafter "AO Training Manual"). The

-23-

year delay to the satisfaction of the agency is a more formidable task than justifying a substantially shorter, five-year period of delay.[11]  We cannot confidently say that the improper attribution of several additional years of delay to Lumataw was not the "final straw" precluding the BIA from exercising its discretion in Lumataw's favor.  Moreover, the absence of an asylum filing deadline at the time of Lumataw's initial entry and for several years thereafter, if recognized, could have itself been considered "extraordinary circumstances" justifying a late filing.  See 8 C.F.R. § 1208.4(a)(5) (defining "extraordinary circumstances" as "factors directly related to the failure to meet the 1-year deadline"); AO Training Manual, at 15-16 (instructing AO's, in conducting "extraordinary circumstances" analysis, to consider "any . . . factor or group of factors" which, "depending on the facts of the case" "produced a significant barrier to timely

---

Manual suggests that whether an exception justifies an untimely filing is a fact-specific determination and instructs asylum officers to ask whether "a reasonable person under the same or similar circumstances as the applicant would have filed sooner." Id. at 19.  The Manual also instructs that asylum officers "must be flexible and inclusive" in examining changed or extraordinary circumstances."  Id. at 18.  Although not binding, the Manual constitutes persuasive authority.

[11]  Nor is successfully justifying a five-year filing delay unprecedented.  See Matter of Mirmehdi, A75-622-144, 29 Immig. Rptr. B1-132 (B.I.A. Aug. 20, 2004) (upholding determination that changed circumstances justified filing asylum application five years after arrival); In re Bassel Marshi, No. A26-980-386, at 1-3 (Op. Atty. Gen. Feb. 13, 2004) (reversing BIA and holding that "changed circumstances" justified alien's thirteen year delay in filing asylum application).

-24-

filing"). Finally, also bearing in mind the canon which, given the drastic consequences of deportation, favors construction of immigration laws in the light most favorable to the alien[12] we find that we are unable confidently to conclude that had the agency conducted the proper timeliness analysis, it would not have found that an exception justifying Lumataw's untimely filing applied. And had the untimely filing been excused, Lumataw would not have been precluded from demonstrating his eligibility for asylum.[13] Thus, we cannot say that the agency's errors did not prejudice Lumataw. We leave it to the agency to determine upon remand whether or not the application of the proper analysis would nevertheless yield the same result.

In reaching this holding, we emphasize that we reach no conclusion as to whether, under the proper analysis, Lumataw's undisputed failure to timely file his application should be excused. Rather, because determinations regarding whether changed or extraordinary circumstances justify a late-filed application are "generally factual determinations," Odmar, 294 F. App'x at 613, we

_____

[12] See Cardoza-Fonseca, 480 U.S. 421, 449 (1987); Pacheco v. I.N.S., 546 F.2d 448, 449 (1st Cir. 1976) (citing Barber v. Gonzales, 347 U.S. 637 (1954)); Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948).

[13] Although, in the course of its withholding of removal inquiry, the agency found that Lumataw had not shown past persecution, because it also determined his asylum application to be untimely, it never evaluated whether Lumataw could qualify for asylum based on a well-founded fear of future persecution. See discussion infra.

-25-

lack authority to make the discretionary determination in the first instance of whether Lumataw in fact warrants an exception to the one-year filing deadline. What we recognize, however, is that the agency committed legal error in conducting its timeliness analysis, and a possibility exists that Lumataw might have satisfied 8 U.S.C. § 1158 (a)(2)(D) but for the IJ and BIA's unambiguous mischaracterization of his filing obligations. See Kojo, 2009 WL 1396836, at *1 (granting petition to review and remanding because "the IJ failed to analyze in the first instance whether changes in Indonesia between 1998 and 2002 justify the untimely filed application" for asylum). Because we cannot conclude that the legal errors raised by this appeal were harmless, we grant the petition for review and remand.

## 2. Past Persecution

Lumataw argues that the agency erred in holding that he failed to make out a claim of "past persecution." Past persecution can serve as the basis for either a withholding of removal or an asylum application. See 8 C.F.R. §§ 1208.13(b), 1208.16(b). The IJ and BIA found that the sole incident cited by Lumataw, even if motivated by religious animus, did not rise to the level of past persecution. See Matter of Acosta, 19 I. & N. Dec. 211, 216 (B.I.A. 1985) (defining "persecution" as a "threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive"). Lumataw argues that this

-26-

conclusion is contrary to the law in this circuit, which holds that "credible threats can, depending on the circumstances, amount to persecution, especially when the assailant threatens the petitioner with death, in person, and with a weapon." Sok v. Mukasey, 526 F.3d 48, 54 (1st Cir. 2008).

Lumataw argues that he credibly testified that he was threatened with death by a person with a knife on account of his Christian religion. The agency so found. But while Sok holds that credible threats could constitute past persecution, whether that is actually shown in any particular case "depend[s] on the circumstances." Id. For example, we have held that "hollow threats . . . without more, certainly do not compel a finding of past persecution." Ang v. Gonzales, 430 F.3d 50, 56 (1st Cir. 2005). As the government accurately notes, the "circumstances" of Sok are distinguishable from those in the instant case in that Lumataw received only a single threat unaccompanied by physical harm, whereas Sok involved "six separate instances in which [she] was either threatened with death or serious injury . . . was beaten and detained, or was with her husband when he was threatened or beaten." Id.; see also Sompotan v. Mukasey, 533 F.3d 63, 71 (1st Cir. 2008) (noting that "'the presence or absence of physical harm, (and, indeed, the degree of harm inflicted) remains a relevant factor in determining whether mistreatment rises to the level of

persecution'" (quoting <u>Ruiz</u> v. <u>Mukasey</u>, 526 F.3d 31, 37 (1st Cir. 2008)).

Ultimately, our authority to disturb the agency's determination is constrained by our deferential "substantial evidence" standard of review "which demands that we uphold the agency's determination unless the evidence points unerringly in the opposite direction." <u>Rashad</u>, 554 F.3d at 6 (quoting <u>Khan</u>, 549 F.3d at 576). We cannot say on these facts that the "record compels a contrary conclusion." <u>Elías-Zacarías</u>, 502 U.S. at 481 n.1 (applying this standard and stating "[t]o reverse the BIA finding we must find that the evidence not only <u>supports</u> the conclusion, but <u>compels</u> it"); <u>see also</u> <u>Arif</u>, 509 F.3d at 680 (explaining that "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive" (internal quotation marks omitted)). We therefore, "find no basis for disturbing [the IJ and BIA's] conclusion that the petitioner failed to show past persecution." <u>Nikijuluw</u> v. <u>Gonzales</u>, 427 F.3d 115, 121 (1st Cir. 2005).

### 3. Well-Founded Fear

Finally, Lumataw argues that even absent a favorable finding on the past persecution question, on remand, Lumataw should be entitled to present an asylum claim based on "well-founded fear of future persecution." We agree. The IJ and BIA found that Lumataw did not meet the standard for <u>withholding of removal</u> on the

-28-

basis of fear of future persecution, as the record did not establish that Lumataw would "more likely than not" be persecuted on the basis of his religion if he returned to Indonesia. We hold this decision to be supported by substantial evidence. However, because Lumataw's asylum claim was dismissed as untimely, Lumataw's fear of future persecution claim was assessed only under the higher standard of proof applicable to withholding of removal claims, rather than the asylum standard. Pan, 489 F.3d at 86 (explaining that "'more likely than not' standard is harder for an alien to satisfy than the 'reasonable possibility' standard for showing a well-founded fear of future persecution in asylum cases"); see also Cardoza-Fonseca, 480 U.S. at 431 (finding in asylum context that ten percent chance of being persecuted provides basis for "well-founded" fear). Lumataw argues that substantial evidence on the record, including various country conditions reports documenting a growing trend of intolerance against Christians in Indonesia, would support at least a ten percent possibility of future persecution if he were removed. We lack authority to evaluate this claim in the first instances. But if, on remand, the IJ finds that Lumataw warrants an exception to the one-year filing deadline, his asylum claim on the basis of well-founded fear of future persecution in Indonesia must be revisited as well.

### III. Conclusion

For the foregoing reasons, we **grant** this petition for judicial review and **remand**.